JOE W. STOUT AND EUDORA STOUT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FLORENCE L. ROGERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 61555, 58593, 61556.    Filed March 25, 1959.

*N. A. Townsend, Jr., Esq., Herman Wolff, Jr., Esq., J. Duane Gilliam, Esq.,* and *J. O. Tally, Jr., Esq.,* for the petitioners.
*Ralph V. Bradbury, Esq.,* for the respondent.

ATKINS, *Judge:* The respondent determined deficiencies in income tax and additions to tax against the petitioners as follows:

| Petitioner | Docket No. | Year | Income tax | Additions to tax | | |
|---|---|---|---|---|---|---|
| | | | | Sec. 291 | Sec. 294(d)(1)(A) | Sec. 294(d)(2) |
| Stout | 61555 | 1952 | $16,512.28 | ------------ | $2,491.89 | ------------ |
| Rogers | 58593 | 1951 | 593.17 | ------------ | ------------ | ------------ |
| Rogers | 61556 | 1952 | 9,220.36 | $2,305.09 | 829.84 | $553.22 |
| Rogers | 61556 | 1953 | 992.92 | ------------ | ------------ | ------------ |

The principal issue presented for decision in Docket No. 61555 is whether an amount paid to petitioner Joe W. Stout as "salary" pursuant to the terms of a partnership agreement, is taxable to him in full. Other issues relate to the deductibility by the partnership of various taxes paid in the course of construction of two apartment projects; whether the petitioners are entitled to a deduction in 1952 of a net operating loss carryback from 1953; and whether they are liable for an addition to tax under section 294(d)(1)(A) for failure to timely file a declaration of estimated tax.

In Docket No. 58593, relating to the year 1951, petitioner Florence L. Rogers and the respondent have entered into a stipulation which completely disposes of all issues except the amount of any net operating loss carryback from 1952 to which the petitioner may be entitled (and the proper amount of deduction for contributions), as a result of our decision of issues in Docket No. 61556. In Docket No. 61556, which relates to the years 1952 and 1953, the respondent concedes error in his determination of all additions to tax and in his failure to treat certain gains from sales of property as long-term capital gains, and also concedes on brief that he failed to carry the burden of proof in respect to an issue involving section 112(k) for the year 1953, which was raised by amendment to his answer. The issues remaining for decision in Docket No. 61556 are whether the petitioner, as one of the partners, is entitled to a deduction in 1952 on account of the payment by the partnership of salaries to petitioner Stout and other partners in that year, and whether as to both 1952 and 1953, in computing net income of the partnership, the taxes above mentioned may be deducted.

### FINDINGS OF FACT.

All the facts were stipulated either orally or in writing, except for certain documents submitted in evidence at the hearing. The stipulations are incorporated herein by this reference.

Petitioners Joe W. Stout (hereinafter referred to as Stout) and Eudora Stout are husband and wife who reside at Fayetteville, North Carolina. For the taxable year 1952 they filed their joint income tax return with the director of internal revenue for the district of North Carolina.

Petitioner Florence L. Rogers is an individual who maintains her principal residence at Fayetteville, North Carolina. For each of the taxable years 1952 and 1953, she filed her individual income tax returns with the director of internal revenue for the district of North Carolina.

On November 1, 1951, Joe W. Stout, Florence L. Rogers, Terry A. Lyon, C. B. McNairy, and Raymond A. Bryan formed a partnership under the name of Fayetteville Building Company, to engage in the

business of dealing in real estate and building houses, apartment houses, etc. The partnership agreement provides in part as follows:

6. The net profits of the partnership shall be divided and the net losses of the partnership shall be borne in the following proportions:

| | |
|---|---|
| Florence L. Rogers | 30% |
| Terry A. Lyon | 10% |
| Joseph Stout | 20% |
| C. B. McNairy | 20% |
| Raymond Bryan | 20% |

\* \* \* \* \* \* \*

8. It shall be the special duty and obligation of Joseph Stout, C. B. McNairy and Raymond Bryan to plan and supervise all construction work done by the partnership. Such work shall be supervised and managed in detail by Joseph Stout and by this agreement, he undertakes to give to such supervision and management all the time reasonably required according to the work on hand. Accordingly, salaries shall be fixed and paid as follows:

(a) Joseph Stout, for the services described above, shall be entitled to a salary equivalent to an amount which equals five per cent (5%) of the actual cost of all construction work performed by the partnership.

(b) Messers [sic] McNairy and Bryan, for the services described above, each shall be entitled to a salary equivalent to an amount which equals two and one-half per cent (2½%) of the actual cost of all construction work performed by the partnership.

(c) Florence L. Rogers and Terry A. Lyon shall receive no salaries.

9. All the above mentioned salaries shall be deducted from the net profits of the partnership as an expense thereof in determining the partners' distributive shares of the net profit of the partnership. If during any year the salary paid shall exceed the net income of the partnership, computed without the deduction of such salaries, the excess shall be treated as a loss of the partnership to be borne by the partners in the proportions stated in paragraph 6 of this agreement.

\* \* \* \* \* \* \*

19. By mutual consent of all partners the partnership may be dissolved at any time. All funds and assets of the partnership after the debts are paid shall be divided among the partners in the proportions provided for by paragraph 6 of this agreement.

At the time of the organization of Fayetteville Building Company the several partners contributed capital to the partnership in amounts as follows:

| Partner | Amount |
|---|---|
| Florence L. Rogers | $750 |
| Terry A. Lyon | 250 |
| Joe W. Stout | 500 |
| C. B. McNairy | 500 |
| Raymond A. Bryan | 500 |

On November 24, 1951, the partnership acquired a tract of land consisting of 22.65 acres, located between Fayetteville and Fort Bragg, North Carolina, from Florence L. Rogers for $5,600 and built thereon a group of rental housing units known as "Eutaw Apartments." To finance this construction the partnership borrowed the amount of

$1,075,700 from a bank. The housing units were 53 per cent complete on the last day of February 1952. They were completed on June 30, 1952. The first occupancy was in April 1952. By July 1, 1952, the entire project was rented.

The partnership used an accrual method in keeping its books of account and filing its tax returns, and it employed a fiscal year ending on August 31.

Pursuant to paragraph 8 of the partnership agreement, the partnership during its fiscal year November 1, 1951, to August 31, 1952, paid salaries to Stout, McNairy, and Bryan in amounts as follows:

| Name | Amount |
|---|---|
| Joe W. Stout | $49, 674. 98 |
| C. B. McNairy | 24, 837. 49 |
| Raymond A. Bryan | 24, 837. 49 |
| Total | 99, 349. 96 |

On its books of account for the fiscal year ended August 31, 1952, the partnership treated as an expense the aforementioned salaries in the total amount of $99,349.96, and the resulting net loss of $114,692.53 per books was allocated among the partners on the partnership books of account as follows:

| Partner | Amount | Percentage of net loss |
|---|---|---|
| Florence L. Rogers | $34, 407. 75 | 30 |
| Terry A. Lyon | 11, 469. 25 | 10 |
| Joe W. Stout | 22, 938. 51 | 20 |
| Raymond A. Bryan | 22, 938. 51 | 20 |
| C. B. McNairy | 22, 938. 51 | 20 |

In its income tax return for the fiscal year ended August 31, 1952, the partnership reported a net loss of $15,342.57. In computing such net loss the salary payments to Stout, McNairy, and Bryan in the respective amounts of $49,674.98, $24,837.49, and $24,837.49 were not deducted as expenses, but were treated as withdrawals by them, and the return contains the following "Reconciliation of Partners' Capital Accounts":

| | Capital account at beginning of year | Partners' shares of ordinary net income | Withdrawals | Capital account at end of year |
|---|---|---|---|---|
| Rogers | $750 | ($34, 407. 75) | | ($33, 657. 75) |
| Lyon | 250 | (11, 469. 25) | | (11, 219. 25) |
| Stout | 500 | 26, 736. 47 | $49, 674. 98 | (22, 438. 51) |
| Bryan | 500 | 1, 898. 98 | 24, 837. 49 | (22, 438. 51) |
| McNairy | 500 | 1, 898. 98 | 24, 837. 49 | (22, 438. 51) |
| Total | 2, 500 | (15, 342. 57) | 99, 349. 96 | (112, 192. 53) |

The petitioner Florence Rogers on her 1952 income tax return claimed an amount of $34,407.75 as representing her distributive share of net loss of the partnership for the fiscal year ended August 31, 1952.

The petitioners Joe W. and Eudora Stout, on their 1952 joint income tax return, reported income from the partnership in the amount of $26,736.47.

In connection with the determination of deficiencies against Florence Rogers and petitioners, Joe W. and Eudora Stout, for the year 1952, the respondent as a result of certain adjustments, including the disallowance of certain deductions for taxes paid, later discussed herein, determined that the partnership for its fiscal year ended August 31, 1952, had ordinary net income of $561.01. In the case of Florence L. Rogers, he accordingly disallowed the claimed deduction of $34,407.75 reported by her as her share of partnership net loss and instead held that she was taxable on $168.31 as her distributive share of partnership net income. In the case of the Stouts he determined that their correct distributive share of partnership net income was $112.20, instead of $26,736.47 which they reported, and accordingly decreased taxable income by the difference of $26,624.27. He determined, however, that the amount of $49,674.98 received by Joe W. Stout was ordinary income under section 22(a) of the Internal Revenue Code of 1939, as compensation for personal services rendered.

In such notices of deficiency the respondent determined that the salaries of $99,349.96 constituted a part of the cost of construction of the rental housing units. He accordingly capitalized such amount and allowed additional depreciation in computing the net income of the partnership.

The respondent determined that the partnership had a net loss for the fiscal year ended August 31, 1953, in the amount of $10,450.92.

*Facts as to Deductibility of Taxes.*

In the fiscal years ended August 31, 1952, and August 31, 1953, the partnership claimed various deductions, including deductions for certain taxes in amounts as follows:

|  | 1952 | 1953 |
|---|---|---|
| North Carolina sales tax | $11,351.10 | $10,431.47 |
| North Carolina use tax | 0 | 1,216.86 |
| Social Security tax (F.I.C.A.) | 2,471.09 | 3,164.81 |
| Federal unemployment tax | 496.05 | 0 |
| North Carolina unemployment tax | 165.35 | 0 |
| Total | 14,483.59 | 14,813.14 |

In the notice of deficiency the respondent allowed the partnership a deduction for the taxes in amounts as follows:

|  | 1952 | 1953 |
|---|---|---|
| North Carolina sales tax | 0 | 0 |
| North Carolina use tax | 0 | 0 |
| Social Security tax (F.I.C.A.) | $47.90 | $78 |
| Federal unemployment tax | 3.19 | 0 |
| North Carolina unemployment tax | 9.58 | 0 |
| Total | 60.67 | 78 |

The respondent disallowed the balance of the deductions claimed by the partnership for taxes upon the ground that the amounts disallowed were capital expenditures. The taxes disallowed by the respondent were paid by the partnership in connection with the construction of two housing projects as follows:

|  | Aug. 31, 1952, Eutaw Apartments | | Aug. 31, 1953, 2d housing project | |
|---|---|---|---|---|
|  | North Carolina sales and use tax | F.I.C.A. and unemployment tax | Sales tax | F.I.C.A. tax |
| Land improvements | $863.13 | $306.09 | $747.73 | $201.90 |
| Buildings | 7,798.84 | 2,765.73 | 9,802.49 | 2,646.80 |
| Furnaces | 709.89 | | 449.91 | 76.59 |
| Oil tanks | 192.67 | | 55.87 | 15.09 |
| Ranges | 537.44 | | 190.49 | 51.43 |
| Refrigerators | 698.93 | | 240.17 | 64.85 |
| Water heaters | 404.17 | | 111.67 | 30.15 |
| Venetian blinds | 146.03 | | | |
|  | 11,351.10 | 3,071.82 | 11,648.33 | 3,086.81 |
|  | | 11,351.10 | | 11,648.33 |
|  | | 14,422.92 | | 14,735.14 |

Upon completion of construction of the two projects, the cost of the land and the improvements, including buildings, was capitalized on the books of the partnership. The amounts so capitalized did not include the taxes or the partners' salaries which are here in controversy.

*Facts as to Stout's Claim to Net Operating Loss Carryback From 1953 to 1952.*

On September 1, 1952, the partnership transferred to a corporation, Eutaw Apartments, Inc., the land and buildings known as Eutaw Apartments, subject to certain liabilities, and received in exchange therefor all the authorized common capital stock of such corporation.

The partnership return for the fiscal year ending August 31, 1953, treated this transaction as a nontaxable exchange.

In the notice of deficiency sent to the Stouts for the taxable year 1952 the respondent held that they did not sustain an operating loss for the year 1953. Attached to such notice of deficiency was an exhibit relating to the income of the partnership, indicating that it had

an ordinary loss of $10,450.92 for its fiscal year ended August 31, 1953. In such exhibit no mention was made of a gain to the partnership upon the transfer of the apartment building to the corporation.

In a notice of deficiency sent to the Stouts for the year 1953, the respondent determined that the partnership had an ordinary loss of $10,450.92 in its fiscal year ended August 31, 1953. He also determined that for that year the partnership had a net short-term capital gain of $74,881.16 upon the transfer of the apartment building to the corporation. He held that the Stouts' "distributable loss from the partnership" was $2,090.18 and that their share of the partnership short-term capital gain was $14,976.23. His computation resulted in a determination that the Stouts had net income of $14,388.41 for the year 1953, rather than a net loss of $2,766.10, as reported by them.

### Additions to Tax Under Section 294(d)(1)(A).

The 1951 income tax return of petitioners Joe W. and Eudora Stout, which was filed on or before May 15, 1952, was prepared by an accounting firm. During the years 1952 and 1953, the head of the accounting firm was a certified public accountant. He held a Treasury card during such years which authorized him to represent taxpayers in tax matters pending before the United States Treasury Department. Under date of May 9, 1952, either he or his firm transmitted to Stout a Federal income tax return for him and his wife covering the year 1951. In the letter of transmittal no reference was made to the transmittal of a declaration of estimated tax for 1952. In the notice of deficiency for the year 1952, the respondent determined that the petitioners Joe W. Stout and Eudora Stout were liable for an addition to tax under section 294(d)(1)(A) of the Internal Revenue Code of 1939, in the amount of $2,491.89 for failure to timely file a declaration of estimated tax for the year 1952.

#### OPINION.

The principal question presented is whether, as determined by the respondent, petitioner Stout is taxable upon the full amount of $49,674.98 paid to him by the partnership in the year 1952, and whether, as a result of such payment and payments of $24,837.49 to each of two other partners, McNairy and Bryan, petitioner Florence L. Rogers, also a partner but who received no such payments, is entitled to a deduction of $34,407.74 as claimed by her.

These payments to three of the partners, totaling $99,349.96, were paid pursuant to the partnership agreement which provided that Stout, McNairy, and Bryan would plan and supervise all construction work done by the partnership and that for such services Stout should be entitled to a "salary" equivalent to 5 per cent of the actual cost of all construction, and that McNairy and Bryan should be

entitled to "salaries" equal to 2½ per cent of such cost of construction.

The partnership agreement provided that these salaries should be deducted from net profits of the partnership as an expense in determining the partners' distributive shares of net profits, but that if during any year the salaries paid should exceed the net income of the partnership, computed without the deduction of such salaries, the excess should be treated as a loss of the partnership, to be borne by the partners in the proportions in which the partners were to share in the net profits and net losses of the partnership, namely, 30 per cent in the case of Florence L. Rogers, 20 per cent in the case of each of the partners Stout, McNairy, and Bryan and 10 per cent in the case of the partner Lyon.

When the partnership was organized in November 1951, the total capital contributed by the partners totaled $2,500. The remaining funds of the partnership were obtained from a construction loan in the amount of $1,075,700. In its income tax return for the fiscal year ended August 31, 1952, the partnership showed a net loss of $15,342.57, without taking into consideration the salaries paid in the amount of $99,349.96. Such salaries were reflected on the partnership return as "withdrawals," resulting in substantial deficits in the capital accounts of each of the five partners.

In their returns for the year 1952, the petitioners Stout and Florence L. Rogers in effect treated the total amount of salaries paid as borne in part by them in proportion to their partnership sharing arrangement as set forth in the partnership ageement, and since the partnership did not show net income, but rather showed a loss, they treated the payment of salaries as having depleted their capital interests in the partnership. As a consequence, Florence L. Rogers claimed a loss of $34,407.75, and Stout reported as income from the partnership only $26,736.47, instead of the full $49,674.98 which was received by him.

Pertinent provisions of the Internal Revenue Code of 1939 relating to partnerships, are set forth in the margin.[1]

It is well established that under the Internal Revenue Code of 1939 any so-called salaries paid to partners, are not to be treated as such in computing the net income of the partnership, but are to be considered as but a means for dividing the partnership profits. *Estate*

---

[1] SEC. 182. TAX OF PARTNERS.

In computing the net income of each partner, he shall include, whether or not distribution is made to him—

    *        *        *        *        *        *        *

(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b).

SEC. 183. COMPUTATION OF PARTNERSHIP INCOME.

(a) GENERAL RULE.—The net income of the partnership shall be computed in the same manner and on the same basis as in the case of an individual * * * [with certain exceptions not here material].

*of S. U. Tilton,* 8 B.T.A. 914, and *Augustine M. Lloyd,* 15 B.T.A. 82. See also Regs. 118, sec. 39.183–1 (b), and G.C.M. 6582, VIII–2 C.B. 200.

In *Augustine M. Lloyd, supra,* salaries were paid to the managing partners in an amount in excess of the partnership earnings. We there held that the amounts paid to the partners in excess of the earnings of the partnership constituted payments out of capital of all the partners, resulting in part in the return of capital to the recipients of the salaries and in part in the receipt of taxable income. We also held that the capital depletion sustained by each partner was deductible by him as an ordinary and necessary business expense. In that case we stated:

We are asked to decide * * * whether * * * the amounts which the petitioners received as salaries from the partnership constitute, in their entirety, taxable income derived from salaries, or whether * * * they are to be treated partly as taxable income from business to the extent of their distributive shares in the partnership net income, the latter to be computed without any deduction for salaries, and partly as a return of their capital contributions not subject to tax.

While these petitioners received the salaries set out in the findings of fact, it is evident that the amount which each received is not the measure of his gain. The payment of these salaries resulted in a partnership deficit for the year in the amount of $12,848.39 and brought about a corresponding depletion of the partnership assets and of the capital of the partners. There was but one source from which the payments made to the petitioners as salaries, in excess of the partnership earnings, could be made, and that was the capital contributions of the partners. So the gain of each of the petitioners could not be greater than the excess of the amount which he received over and above his proportionate share of the partnership loss. Whether he meets his share of the loss out of his pocket or permits such loss to be charged against his interest in the partnership assets, the answer is the same—he has suffered a depletion in his capital, and we entertain no doubt that this is a factor to be reckoned with in determining each petitioner's net income.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

As we have already stated, there was but one source from which the payments made to these petitioners as salaries in excess of the partnership earnings could be made, and that was the capital of all of the partners. We entertain no doubt that to the extent the amount paid to each petitioner was paid out of the capital of the five other partners, it constitutes taxable income to him; but we hold that to the extent it was paid out of his own capital, it represents a return of capital and is not subject to the tax. * * *

There remains for consideration the fact of the depletion of each petitioner's capital by his proportionate share of the amounts paid to the other two petitioners, as salaries, in excess of their distributive shares in the partnership net income. * * *

These capital depletions are ordinary and necessary expenses incurred in carrying on the business of each petitioner, and, as such, are deductible in computing their respective net incomes.

The respondent concedes the correctness of the principles set forth in the *Lloyd* case and followed them in G.C.M. 6582, *supra,* but con-

tends that the instant case does not fall within the rule of that case and the G.C.M. His principal point is that in the *Lloyd* case, as well as in the G.C.M., after the "salaries" had been paid out by the partnership, its assets were in fact depleted to that extent, whereas here partnership assets were not depleted; the partnership had simply substituted for cash a rental housing project; the "salaries" were capital expenditures for the buildings. He in effect contends that Stout, Bryan, and McNairy were engaged in independent business and were employed by the partnership to perform a specific, technical nonrecurring service, and that they were dealing with the partnership as would a third party. But here the stipulated facts show that the amounts were paid to them pursuant to the provisions of the partnership agreement and not pursuant to a separate contract for performance of services. Cf. *H. H. Wegener*, 41 B.T.A. 857, affd. (C.A. 5), 119 F. 2d 49. And there is no evidence and no contention that the partnership agreement was a sham or fiction. We think the amounts must be considered as distributions pursuant to the partnership agreement.

In applying the principles of the *Lloyd* case to the instant case it must be borne in mind that in that case the partnership had capital, which had been contributed by the partners, in an amount sufficient to cover the excess of salaries paid over the net income of the partnership; also that each partner had made a contribution to capital in an amount in excess of the portion of salaries which, under the partnership agreement, he was to bear. Thus it was correctly stated in that case that the salaries, to the extent not paid out of partnership income, were paid out of the capital contributions of the partners. Furthermore, to the full extent each partner's account was charged, the reduction in his capital account represented an actual outlay (capital contribution) by such partners. (The same was true in G.C.M. 6582, *supra*.) The principles of the *Lloyd* case may not be extended to situations involving a different factual situation.

On brief the respondent calls attention to the fact that the total capital investment of all the partners in the instant case was only $2,500 and that there had been no net earnings by the partnership, yet petitioner Florence L. Rogers with a capital investment of only $750 reported a loss of $34,407.75, and petitioner Stout with a capital investment of only $500 and who received $49,674.98 in salary, reported only $26,736.47 as income received from the partnership.

In 1952 the partnership paid out a total of $99,349.96 to three of the partners. Since there had been contributed to the partnership by all partners only $2,500, it is obvious that no more than the latter amount could have been paid from contributions of the partners. The re-

mainder, insofar as we can determine, must have been paid from the proceeds of the loan of $1,075,700 made to the partnership by the bank for construction of the buildings, unless some portion was paid out of earnings of the partnership, which will depend upon our holdings herein on other matters.

The amount paid to petitioner Stout was $49,674.98. Under the *Lloyd* case any amount thereof which was paid out of his capital contribution would represent a return of capital to him and he would also be entitled to a deduction of any portion of his capital contribution which was used to pay the salaries of the other two partners. But the total which he is entitled to exclude from taxable income, either by return of capital or deduction, cannot be greater than his total contribution of $500. We think he is properly taxable upon the full amount received, less the $500 which was exhausted in the payment of the salaries. In the *Lloyd* case we held that the salaries paid were taxable because paid partly out of earnings of the partnership and partly out of capital contributions of other partners. Here it may well be that there were no earnings of the partnership for the year 1952 and only a small part could have been paid from capital contributions of all the partners. Nevertheless, we think that since the full amount of $49,674.98 was received by Stout under a claim of right and without restriction as to disposition, that amount, less the return of capital, constitute taxable income to him under the broad provisions of section 22(a) of the Internal Revenue Code of 1939.[2] *North American Oil Consolidated* v. *Burnet*, 286 U.S. 417. The amount was paid unreservedly by the partnership and there was no question of Stout's right to keep the full amount.

It is true that the partnership agreement provided that to the extent the salaries paid by the partnership in any year exceeded the net income of the partnership, the excess was to be borne by the partners in the proportions that they were to share profits, and it might therefore be argued that a lesser amount is taxable to Stout on the ground that he was to bear 20 per cent of all the salaries paid. But as we construe the partnership agreement, it merely means that the capital accounts of the partners were to be charged proportionately and would be in this way a factor upon a division of profits or assets at some future time. Each partner's capital account was proportionately

---

[2] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

charged, resulting in a deficit in each such account. It does not appear that any of the partners have paid in more capital. It is argued that each partner was liable upon the loan made to the partnership by the bank. This may be so (see sec. 59–45, N.C. Gen. Stat. (1950)), but we do not have any details regarding the original loan or as to any remaining liability of the partnership or the individual partners after the transfer of Eutaw Apartments to a corporation on September 1, 1953. In any event, whether any of the partners will ever individually be called upon to pay is problematical. Insofar as shown here, petitioner Stout was upon the cash receipts and disbursements method of accounting, and there is no evidence that in the years in question he had made any payment in addition to his original contribution to the partnership. He may never be called upon to make good any part of the salaries paid by the partnership. Any possibility that in the future he might be called upon to make any payment or to meet any partnership debts is not sufficient, in our opinion, to render the claim of right doctrine inapplicable. See *Healy* v. *Commissioner*, 345 U.S. 278. Nor is it sufficient to entitle him to any deduction in excess of the amount of his original contribution which was used to pay salaries to other partners.

Under the *Lloyd* case petitioner Florence L. Rogers, for reasons set forth above, is entitled to a deduction in 1952 of the amount of her capital contribution, $750, since that was completely exhausted in paying the salaries to the other partners; but she is not entitled to any greater deduction. Here also it is pertinent to point out that she may never be required to pay any additional amount as a result of the payment by the partnership of the salaries to the other partners. She also, insofar as the record shows, was upon the cash receipts and disbursements methods of accounting, and we know of no authority in law which would permit her a deduction of any greater amount than she was out of pocket.

The respondent in computing the net income of the partnership for each of the fiscal years ended August 31, 1952 and 1953, disallowed deductions claimed for taxes paid in connection with the construction of the two housing projects, such being Federal social security taxes (F.I.C.A.), Federal unemployment taxes, and North Carolina sales, use, and unemployment taxes. His stated reason was that the amounts paid constituted "capital expenditures in connection with construction, and not deductible as taxes in computing net income." He did allow the deduction of the relatively small portion of Federal social security and unemployment taxes and State unemployment taxes which did not relate to the construction of buildings. There are set forth in

the margin pertinent provisions of the Internal Revenue Code of 1939.[3]

We first consider the Federal social security and the Federal unemployment taxes. The aggregate amounts expended are set forth in the findings, and the respondent does not question that these were imposed upon the partnership and were paid. He argues, however, that since the services rendered, which gave rise to such taxes were in connection with the construction of the buildings, the taxes take on the same character as the wages or salaries paid and that they therefore represent a part of the cost of the buildings, which must be capitalized and may not be deducted. In this connection it is to be noted that section 24(a)(2) provides that no deduction shall be allowed in respect of any amount paid out for new buildings or for permanent improvements. It is also to be noted, however, that although section 23(c)(1)(F) precludes the deduction of Federal excise taxes *as such*, it is specifically provided that that subsection shall not prevent the deduction of such taxes under subsection (a), which relates to ordinary and necessary business expenses.

---

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
(a) EXPENSES.—
(1) TRADE OR BUSINESS EXPENSES.—
(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

* * * * * * *

(c) TAXES GENERALLY.—
(1) ALLOWANCE IN GENERAL.—Taxes paid or accrued within the taxable year, except—

* * * * * * *

(F) Federal import duties, and Federal excise and stamp taxes (not described in subparagraph (A), (B), (D), or (E)), but this subsection shall not prevent such duties and taxes from being deducted under subsection (a).

* * * * * * *

(3) GASOLINE AND RETAIL SALES TAXES.—In the case of a tax imposed by any State * * * or any political subdivision thereof, upon persons engaged in selling tangible personal property at retail * * * which is measured by the gross sales price or the gross receipts from the sale or which is a stated sum per unit of such property sold, or upon persons engaged in furnishing services at retail, which is measured by the gross receipts for furnishing such services, if the amount of such tax is separately stated, then to the extent that the amount so stated is paid by the consumer (otherwise than in connection with the consumer's trade or business) to his vendor such amount shall be allowed as a deduction in computing the net income of such consumer as if such amount constituted a tax imposed upon and paid by such consumer.
SEC. 24. ITEMS NOT DEDUCTIBLE.
(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

* * * * * * *

(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property * * *

* * * * * * *

(7) Amounts paid or accrued for such taxes and carrying charges as, under regulations prescribed by the Commissioner with the approval of the Secretary, are chargeable to capital account with respect to property, if the taxpayer elects, in accordance with such regulations, to treat such taxes or charges as so chargeable.

The controversy centers around section 24(a)(7), which provides that in computing net income no deduction shall be allowed in respect of:

Amounts paid or accrued for such taxes and carrying charges as, under regulations prescribed by the Commissioner with the approval of the Secretary, are chargeable to capital account with respect to property, if the taxpayer elects, in accordance with such regulations, to treat such taxes or charges as so chargeable.

The respondent contends that section 24(a)(7) was not intended to and does not permit the deduction of taxes, either as such or as ordinary and necessary business expenses, if they are properly chargeable to capital account. He insists that these taxes are properly chargeable to capital account.

Pursuant to section 24(a)(7) the Commissioner promulgated regulations in which there are set forth some specific types of taxes which may be either charged to capital account or deducted as the taxpayer may elect.[4] It is to be noted that these regulations specifically pro-

---

[4] Section 39.24(a)-6 of Regulations 118 and section 29.24-5 of Regulations 111 contain similar provisions. The former provides in part:

* * * (a) *General.* In accordance with section 24(a)(7), items enumerated in paragraph (b)(1) of this section may be capitalized at the election of the taxpayer. Thus, taxes and carrying charges with respect to property, of the type described in this section, are chargeable to capital account at the election of the taxpayer notwithstanding that they are expressly deductible under section 23. No deduction is permitted for any items so treated.

(b) *Taxes and carrying charges.* (1) The following items may upon the election of the taxpayer, in the manner provided in paragraph (c) of this section, be treated as chargeable to capital account (either as a component of original cost or other basis, for the purposes of section 113(a), or as an adjustment to basis, for the purposes of section 113(b)(1)(A)), notwithstanding that they are expressly deductible under section 23:

*        *        *        *        *        *        *

(ii) In the case of real property, whether improved or unimproved and whether productive or unproductive, expenditures (otherwise deductible) paid or incurred in the development thereof or in the construction of an improvement or additional improvement thereon, up to the time the development or construction work has been completed, such as * * * taxes of the owner of the property measured by compensation paid to his employees and taxes of such owner imposed on the purchase of materials for such work or on the storage, use, or other consumption in the State of materials for such work which are purchased for storage, use, or other consumption in that State * * *

*        *        *        *        *        *        *

(2) If for any taxable year there are two or more items, such as social security taxes, use taxes, or any other type of items above described, relating to the same project to which the election is applicable, the taxpayer may elect to capitalize any one or more of such items even though he does not elect to capitalize the remaining items or to capitalize items of the same type relating to other projects. * * *

*        *        *        *        *        *        *

(4) The following examples are illustrative of the application of the provisions of this paragraph:

*        *        *        *        *        *        *

*Example (2).* X began in February 1952 the erection of a building for himself. X in 1952, in connection with the erection of the building, paid $6,000 social security taxes, which in his 1952 return he elected to capitalize. X must continue to capitalize the social security taxes paid in connection with the erection of the building until its completion in 1954.

*Example (3).* Assume the facts in example (2) except that in November 1952, X also begins to build a hotel which will be completed in 1955. In 1952 X pays $3,000 social

vide that social security and other taxes measured by compensation paid to employees engaged in construction of a capital asset may be either capitalized or deducted at the election of the taxpayer. Example 3 specifically states that social security taxes paid in connection with the erection of a hotel may be deducted. The respondent does not claim that these regulations are invalid. On brief he does not discuss these provisions. Under the circumstances, we think there is no issue as to the validity of the regulations. In any event we cannot say that they are contrary to law. In this connection we note that section 23(c)(1)(F) specifically provides that Federal excise taxes, although not deductible as taxes, may constitute deductions under section 23(a). The regulations, in providing taxpayers the election to either capitalize or deduct social security and other taxes imposed upon them measured by compensation to employees in connection with construction would not seem to represent an unreasonable exercise of discretion by the Commissioner and the Secretary of the Treasury.[5] Since the petitioner did not elect to capitalize the Federal social security and the Federal unemployment taxes, we think the respondent erred in disallowing the claimed deductions on account thereof.

The North Carolina "unemployment taxes" are the employer contributions to the State unemployment compensation or insurance fund, paid pursuant to section 96–9, N.C. Gen. Stat. (1950). These payments are compulsory and constitute taxes. See *Prudential Insurance Co.* v. *Powell*, 217 N.C. 495, 8 S.E. 2d 619. They are therefore deductible under section 23(c)(1) of the Internal Revenue Code of 1939. The North Carolina use tax is imposed upon every person storing, using, or otherwise consuming tangible personal property purchased or received from a retailer. N.C. Gen. Stat. sec. 105–220 (1950). Accordingly, the use taxes paid by the partnership in the taxable year 1953 are clearly deductible under section 23(c)(1) of

security taxes in connection with the erection of the hotel. X's election to capitalize the social security taxes paid in erecting the building started in February 1952 does not bind him to capitalize the social security taxes paid in erecting the hotel; he may deduct the $3,000 social security taxes paid in erecting the hotel.

\* \* \* \* \* \* \*

(5) The sole effect of section 24(a)(7) is to permit the items enumerated in subparagraph (1) of this paragraph to be charged to capital account notwithstanding that a deduction is expressly provided therefor in section 23. \* \* \* This section does not \* \* \* have the effect of making deductible an item which is not deductible under section 23 (such, for example, as salaries or other compensation paid or incurred for services rendered in the construction of property).

[5] The taxable years here involved are subject to Regulations 111 and 118 and, of course, no opinion is expressed regarding the correctness of section 1.266–1 of the regulations under the Internal Revenue Code of 1954, which provides that taxes imposed by the Federal Insurance Contributions Act and the Federal Unemployment Tax Act must be capitalized when they are paid or incurred in connection with the construction or acquisition of a capital asset. See 26 C.F.R. sec. 1.261 (T.D. 6313, 1958–2 C.B. 114).

1214

the Internal Revenue Code of 1939. Since the partnership did not elect to capitalize the North Carolina unemployment tax and the North Carolina use tax the respondent erred in disallowing the claimed deductions on account thereof.

In the taxable years 1952 and 1953 the partnership claimed deductions of North Carolina sales taxes in the respective amounts of $11,351.10 and $10,431.47. The parties have not stipulated the sections of the North Carolina statutes under which these sales taxes were imposed. On brief the petitioners state that these taxes were imposed by article 5, chapter 105, N.C. Gen. Stat. (1950) (secs. 105–164 to 105–187). They call particular attention to section 105–165 and section 105–187.

Section 105–168 imposes upon every retail merchant a tax of 3 per cent of the total gross sales of the business. Section 105–165 states that this tax is levied as a license or privilege tax for engaging or continuing in the business of a retail merchant. It further provides that retail merchants may add to the price of the merchandise the amount of the tax on the sale thereof and that when so added it shall constitute a part of such price, shall be a debt from the purchaser to the merchant until paid and shall be recoverable at law in the same manner as other debts. It is therein stated that it is the purpose and intent that the tax levied on retail merchants shall be added to the sale price of merchandise and thereby be passed on to the consumer instead of being absorbed by the merchant.

Section 105–187 of the General Statutes of North Carolina imposes an excise tax of 3 per cent of the purchase price on all tangible personal property purchased or used, which enters into or becomes a part of any building. This tax is levied against the purchaser, but is not applicable in the event the sale or use of the personal property involved has already been subjected to a tax equal to or in excess of that imposed by this section, whether under the laws of North Carolina, or any other State or territory.

Since, as stated, the record does not disclose the particular provision under which the sales taxes here involved were imposed, we think it must be assumed that they are the ordinary retail sales tax imposed by section 105–168. In any event, the petitioners, upon whom rests the burden of proof, have not shown that any part of these taxes were imposed directly upon the partnership by section 105–187 or any other provision of North Carolina law.

It is well established that in order to be entitled to a deduction for taxes paid, a taxpayer must show that he not only paid the taxes, but that the taxes were imposed upon him by the taxing authority. *Malcolm McDermott*, 3 T.C. 929 (reversed on another issue (C.A.D.C.) 150 F. 2d 585) and cases cited therein. We think it clear from a

reading of sections 105–165 and 105–168 that the North Carolina retail sales tax is imposed upon the vendor. We so held in the *McDermott* case, relying upon *Leonard* v. *Maxwell*, 216 N.C. 89, 3 S.E. 2d 316, and concluded that therefore the tax was not deductible as such by the purchaser. The petitioners cite *Henderson* v. *Gill*, 229 N.C. 313, 49 S.E. 2d 754, in support of their contention that the retail sales tax is imposed on the purchaser. We have carefully examined that case and, while there is a statement to that effect in the court's opinion, the decision does not represent a holding to that effect. Indeed, the actual holding in that case would seem to support the view that the retail sales tax is imposed upon the seller. We accordingly conclude that the sales taxes here involved are not deductible as such by the partnership. The mere fact that these taxes were added to the purchase price of merchandise purchased by the partnership is not sufficient to make them taxes as to the partnership.

Section 23 (c) (3) of the Internal Revenue Code of 1939 permits the deduction, under certain circumstances, of retail sales taxes, *as such*, by the purchaser, even though not imposed upon him, but not if they are incurred or paid in connection with the purchaser's trade or business. Here the amounts were clearly incurred by the partnership in connection with its business, and therefore these taxes are not deductible *as such*. Nor do we think the amounts so paid by the partnership are deductible as ordinary and necessary business expenses. Actually they were passed on to the partnership as a part of the cost of articles purchased. Accordingly, they must be capitalized as a part of the cost of such articles or of the buildings of which they became integral parts. Sec. 24 (a) (2). The regulations under section 24 (a) (7) of the Code, quoted in the margin hereinabove, do not provide that sales taxes which are merely passed on to the purchaser are expenditures of the type which may be either deducted or capitalized at the election of the purchaser.

By amendment to the petition in Docket No. 61555, petitioner Stout raises the issue of whether he is entitled to a deduction in the year 1952 of a net operating loss carryback from the year 1953 in the amount of $2,569.08. The year 1953 is not otherwise before us in that docket. In the notice of deficiency for the year 1952, the respondent specifically held that the Stouts did not sustain a net operating loss for the year 1953. Whether they had such a net operating loss depends largely upon the amount of Stout's share of profits or losses of the partnership. This in turn depends in part upon the question whether various taxes hereinabove discussed are deductible by the partnership, and also upon whether the partnership had a short-term capital gain of $74,881.16 in 1953 upon the transfer of its apartment building to a corporation, as determined by the respondent in a notice of defi-

ciency addressed to the Stouts for the year 1953 and introduced in evidence in this case. We take notice of the fact that as a result of the notice of deficiency addressed to the Stouts for the year 1953, there is pending before this Court a petition involving the tax liability of the Stouts for that year, including the issue regarding partnership income.

The burden of proof in the instant case is upon the petitioners to prove that they are entitled to a deduction in 1952 of a net operating loss carryback from the year 1953. Upon the evidence presented here we are unable to decide whether or not the partnership had a short-term gain in 1953 in the amount stated. If it did, it would appear that inclusion in the Stouts' income for that year of Stout's share of such gain would result in net income rather than a net operating loss. We hold that the petitioners have failed to prove that they are entitled to a deduction in 1952 of a net operating loss carryback from 1953.

The Stouts allege that the respondent erred in determining an addition to tax under section 294(d)(1)(A) of the Internal Revenue Code of 1939,[6] stating that their failure to timely file a declaration of estimated tax for 1952 was due to reasonable cause and not to willful neglect.

The burden of proof upon this issue is upon the petitioners. The evidence presented is far from adequate. Substantially all that is shown is that the accounting firm which prepared their return for the year 1951 did not refer, in the transmitting letter, to a declaration of estimated tax for 1952. We have no evidence as to the arrangement with the accounting firm or as to any advice given by such firm. Under the circumstances we hold that the petitioners have not shown that their failure to file was due to reasonable cause and not to willful neglect. Accordingly, they are liable for a proper addition to tax under section 294(d)(1)(A).

The parties have stipulated that proper adjustment of the partnership's depreciation deduction may be made under Rule 50, in the light of our holdings herein.

*Decisions will be entered under Rule 50.*

---

[6] SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT.

(d) ESTIMATED TAX.—

(1) FAILURE TO FILE DECLARATION OR PAY INSTALLMENT OF ESTIMATED TAX.—

(A) Failure to File Declaration.—In the case of a failure to make and file a declaration of estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect, there shall be added to the tax 5 percentum of each installment due but unpaid, and in addition, with respect to each such installment due but unpaid, 1 percentum of the unpaid amount thereof for each month (except the first) or fraction thereof during which such amount remains unpaid. * * *