THOMAS R. UNDERWOOD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Underwood v. Comm'r
Docket No. 1893-80 United States Tax Court
T.C. Memo 1983-99; 1983 Tax Ct. Memo LEXIS 690; 45 T.C.M. (CCH) 776; T.C.M. (RIA) 83099; February 14, 1983. James L. Kennedy, for the petitioner. Isham B. Bradley, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's individual income tax for the calendar year 1977, in the amount of $937.31. The sole issue for decision is whether *691 petitioner is entitled to a deduction under section 164[1] for the sales tax paid on the materials which were used in the construction of a home for petitioner. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time of the filing of his petition herein, petitioner, Thomas R. Underwood, resided in Knoxville, Tennessee. Petitioner filed a Federal individual income tax return for the calendar year 1977 with the Internal Revenue Service Center, Memphis, Tennessee. Petitioner, during the year 1977, was employed by the Knoxville Board of Education as a director of elementary education. Petitioner, during such year, was also employed as a manager of the Knoxville Teacher's Credit Union. Petitioner in January 1976 purchased a lot and began to make plans for constructing his home on it. From early 1976 through the spring of 1976, he formulated plans for the home. By the summer of 1976, petitioner began developing written plans and diagrams for the home. Petitioner had a friend *692 named Benjamin P. Hill who was employed as a principal, and had previously been employed as a schoolteacher, in the Knoxville School System. In addition to his employment with the school system, Mr. Hill, since 1969, has been engaged in the business of building homes. By 1976, Mr. Hill in his business had begun averaging starting construction on a home per month; thus, in 1976 and 1977 he had approximately 12 to 13 homes under construction in each year. As of early 1976, petitioner had begun discussing his plans for the construction of his home with Mr. Hill. Petitioner subsequently asked Mr. Hill if he would undertake the construction of petitioner's home. Mr. Hill in his business primarily built homes for resale. However, he had built several homes as a contractor for other individuals on a cost-plus basis. When he built a home as a contractor, Mr. Hill charged a fee based on his cost plus 15 percent, plus another 3 percent for overhead, and an additional $10 for each hour he actually spent in supervising the work. The additional 3 percent charge for overhead, however, was not charged with respect to all items entering into his cost but only as to certain items. Mr. Hill, *693 at this time, had four to six houses under construction in another part of the Knoxville area. Because of these homes he had under construction, all of which were a minimum distance of about 20 miles from petitioner's lot, Mr. Hill told petitioner that while he might have some time, he was not in the position to undertake the construction of petitioner's home under his normal contracting arrangement. Mr. Hill stated to petitioner that he did not have the time to provide the amount of supervision over the construction which he normally provided when he contracted to build a home for another. Petitioner had some experience related to home construction prior to 1976. He had built some small projects and had extensively remodeled another home in which he had lived. Petitioner had also done some electrical and plumbing work for himself. Further, petitioner had also gained some knowledge of construction through being an officer of the credit union. In several instances where the credit union had financed the construction of a home, petitioner as the manager of the credit union would at various times inspect the building site to see that work was proceeding satisfactorily. Although *694 petitioner had some knowledge about building techniques, he was not an expert on home construction. Petitioner did not have sufficient knowledge to supervise the grading work needed on a house site, nor did he have sufficient expertise to supervise the pouring of d concrete footings or the laying of concrete blocks for a home's foundation. Petitioner also did not have sufficient expertise to accurately estimate the quantities of basic building materials which would be needed in order to construct a particular home. Petitioner and Mr. Hill entered into an oral agreement that Mr. Hill would supervise certain phases of the construction and help procure certain materials. The two agreed that Mr. Hill was to bill petitioner periodically for any purchases and any labor incurred by Mr. Hill and would include in the billing a commission for himself equal to 12 percent of such costs and labor incurred. Mr. Hill was to keep at least one copy of any bill, statement or invoice, for materials or for labor for which he had been billed, and was to turn the same over to petitioner with the periodic statement. Petitioner had some preliminary site work done for the house, and plans were drawn *695 for the home in late 1976. However, because of weather conditions and some delays in finalizing the plans, actual construction on the home did not start until some time in 1977. During the year 1977, petitioner was in the process of having the house constructed. Mr. Hill supervised the grading work required for the seat of the house's foundation. He also supervised the pouring of the concrete footings and the laying of the concrete blocks which comprised the house's foundation. Mr. Hill arranged for the purchase of the concrete blocks and also lined up a block mason to lay them. Mr. Hill also solicited bids for materials required for the framing of the house and gave petitioner the name of a person who could do the framing work. Mr. Hill was available to either supervise or inspect the work done throughout the initial stages of the construction until the house was "dried in." A house is considered "dried in" once its roof and basic skeleton have been erected. Additionally, Mr. Hill made his own workers available for certain parts of the construction. His men poured the concrete footings and they also later hung some of the cabinets. However, once the house was both bried *696 in and sheetrocked, Mr. Hill spent very little time, if any, on petitioner's house since he was busy with the construction of his other houses. Since Mr. Hill was well established in the business of constructing homes, many suppliers of construction materials in the Knoxiville area would offer him good discounts. Although many suppliers in the Knoxville area make it a practice to extend discounts to contractors, the discounts extended to Mr. Hill were at times even more favorable because of the large volume of materials which he purchased in a year. Mr. Hill had established credit and maintained accounts with certain suppliers. In order to be entitled to the discounts offered him, it was usually required that he pay his bill within a certain number of days after billing. In many instances, Mr. Hill was billed by particular suppliers on a monthly basis. In the construction of petitioner's home, petitioner and Mr. Hill tried to take advantage of any discounts which were available. In most instances, Mr. Hill, upon receiving payment from petitioner, would issue his own checks to the suppliers. In some instances, Mr. Hill would pay for labor or supplies when the supplier's statement *697 was presented. Mr. Hill would then include such amounts paid in his periodic statement to petitioner and be reimbursed by petitioner for the cost of the supplies. During the course of construction, petitioner hired and paid certain subcontractors directly. Petitioner also selected a substantial number of materials and supplies that went into the construction of the house. Petitioner would either go to various stores or would meet certain suppliers at the jobsite. In some instances, petitioner not only personally ordered certain materials and supplies but also paid for the materials and supplies directly. Where he did not pay for the materials directly, petitioner would charge the materials to Mr. Hill's account and reimburse Mr. Hill subsequently when Mr. Hill was billed for the materials. The home was for the most part completed by the end of 1977. However, because of one or two minor problems which he wanted to solve before moving in, petitioner did not move into his new home until June of 1978. From that date through the date of the trial, the home has been petitioner's personal residence. Based on his past experience in filing his own income tax returns over the *698 years, petitioner believed and understood that in addition to a deduction for the applicable amount found under the sales tax tables promulgated by the Internal Revenue Service, a taxpayer might also claim a deduction for the amount of sales tax paid on materials used in constructing a new home. In October 1976, prior to the time actual construction began on the home, petitioner phoned the local office of the Internal Revenue Service to inquire if the same would continue to apply for the year 1977. Petitioner in his call explained that he intended to build a home and wanted to know if the sales tax paid on materials would be deductible. The woman at the end of the line would not identify herself, but told petitioner that he had to have receipts which separately stated the portion of the purchase price which was sales tax. Additionally, petitioner consulted the Internal Revenue Service publication for the year 1976 entitled "Your Federal Income Tax" and read the section in the publication pertaining to sales tax. In October 1976, petitioner opened a separate checking account from which he intended to make all payments in connection with the construction of the house. Petitioner, *699 on his income tax return for 1977, claimed a deduction for general sales tax in the amount of $3,616.17. Petitioner, in completing his 1977 income tax return, had consulted the Internal Revenue Service publication for the year 1977 entitled "Your Federal Income Tax." This publication contained the following pertinent statements concerning deductibility of general sales tax: 2) It Must Be Imposed Upon You General sales and gasoline taxes are deductible if they are stated separately and paid by you, whether they are directly imposed on your or are imposed on the seller. 3) It Must Be Paid You must have paid the tax during your tax year. Most taxpayers use the calendar year accounting period and the cash method of accounting. They may deduct only those taxes paid during the calendar year for which they file the return. General Sales Taxes Average State general sales tax tables are available for use in figuring your State sales tax deduction. * * * The only sales taxes you can add to the table amount are those paid on the purchase of the following items: A boat, airplane, home (including mobile or prefabricated) or materials you bought to build a new home if: 1) *700 The tax rate was the same as the general sales tax rate; and 2) The seller stated the tax separately from the price of the item but included it in the total amount you paid. A car or truck, unless you bought it in the District of Columbia, Vermont or West Virginia. (In these areas, deduct only that part of the sales tax paid at the general sales tax rate.) This information contained in this publication was similar in all material respects to that contained in the previous publication for the year 1976. Respondent in his notice of deficiency disallowed $2,209.92 of the deduction claimed by petitioner on his return for sales tax with the following explanation: It is determined that the amount of $3,616.17 claimed on your 1977 return as sales tax is not allowable to the extent of $2,209.92, because it has not been established that any amount in excess of $1,406.25 was expended for the purpose designated or constitutes a deductible expense under section 164 of the Internal Revenue Code. The disallowed amount represents sales tax on materials purchased for construction of a new residence. Accordingly, your taxable income for 1977 is increased $2,209.92. *701 [2]
OPINION Section 164(a) (4) allows a deduction for general sales tax which is paid or accrued within the taxable year. For a cash basis taxpayer to be entitled to a deduction, the sales tax generally must have both been imposed on and paid by him. Petty v. Commissioner,77 T.C. 482, 484 (1981); Armentrout v. Commissioner,43 T.C. 16, 19 (1964). See also, section 1.164-1(a), Income Tax Regs.Section 164(b) (5) provides that where sales *702 tax is separately stated and is paid by the consumer, other than in connection with his trade or business, to his seller, such tax shall be treated as imposed on the consumer. The regulations therefore state that the term "sales tax" generally means a tax imposed upon persons engaged in selling tangible personal property, or upon consumers of such property. The same regulations add that in general the term "consumer" means the ultimate user or purchaser; such term does not include a purchaser who is a retailer who acquires property for resale. Sections 1.164-3(e) (1) and -3(e) (2), Income Tax Regs. In the instant case, it is clear that the Tennessee sales tax is a general sales tax within the meaning of section 164 and that under the Tennessee statutes such sales tax is imposed on the retail seller. Tenn. Code Ann. sec. 67-3003 (1976) provides, in pertinent part, as follows: 67-3003. Levy of tax--Rate.--It is declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of selling tangible personal property at retail in this state, *703 * * *. For the exercise of said privilege, a tax is levied as follows: (a) At the rate of three per cent (3%) of the sales price of each item or article of tangible personal property when sold at retail in this state; the tax to be computed on gross sales for the purpose of remitting the amount of tax due the state, and to include each and every retail sale. Except that the rate of tax on retail sales provided for in this paragraph shall be four and one half per cent (4-1/2%) until June 30, 1977, at which time it shall be three per cent (3%). Tenn. Code Ann. sec. 67-3018 (1976) provides that every dealer making sales shall be liable for such tax. Under Tenn. Code Ann. sec. 67-3017 (1976), the term "dealer" is defined to include anyone who sells at retail or who offers tangible personal property to be used or consumed in Tennessee. Although Tennessee law envisions that the retail seller will pass on the cost of the tax to the purchaser, the incidence of the tax falls on the retail seller. Tenn. Code Ann. secs. 67-3018 and 67-3020 (1976).[3] See also, Rule 1320-5-1.90(1), Tenn. Sales and Use Tax Rules and Regs. [4]
*704 Petitioner, to be entitled to a deduction for sales tax must therefore come within section 164(b)(5), which provides that where the incidence of a sales tax falls on the seller, it is to be treated as imposed on the consumer. However, section 164(b)(5) by its terms is expressly inapplicable to purchases made in connection with the consumer's trade or business. Section 164(b)(5) was made inapplicable to business purchases because Congress clearly intended that the sales tax paid on such purchases shall be treated as part of the cost of the goods and expensed or capitalized as part of such cost, depending upon the consumers' use of the goods. Rogers v. Commissioner,281 F.2d 233, 238 (4th Cir. 1960), affg. on this point 31 T.C. 1199 (1958); Petty v. Commissioner,supra at 489-490. In the Petty case, we held that an individual who hired a general contractor to construct a home for him was not entitled to deduct the sales tax paid with respect to purchases of materials made by the contractor in order to construct the home. In Petty, *705 under North Carolina law the sales tax involved was not imposed upon the purchaser but upon the retail seller. Further, in such case we held the contractor to be the consumer of the materials purchased since under the circumstances present the contractor was not an agent of the taxpayer but, instead, was an independent contractor. Similarly, in the instant case the question of whether the sales tax paid with respect to materials purchased by Mr. Hill was "imposed" on petitioner as provided under section 164(b)(5) depends upon whether Mr. Hill was acting as an agent of petitioner or as an independent contractor. [5] It is petitioner's contention that Mr. Hill's role was that of a purchasing agent or a conduit through whom the materials were purchased in order to obtain the discounts offered by the suppliers. Petitioner maintains that he was the actual contractor of the home and that Mr. Hill functioned only in a capacity as an adviser. Respondent maintains that the record does not establish that petitioner was the actual contractor of the home. Respondent also makes the further argument that Tennessee law views a contractor as the consumer of the materials purchased. Respondent *706 therefore contends that since Mr. Hill is a contractor and since the materials were purchased through his account, under Tennessee State law he would be the consumer of materials purchased. We do not accept respondent's contention that solely as *707 a matter of law Mr. Hill was the consumer of the materials purchased and that petitioner is therefore precluded from a sales tax deduction. It is true that in the typical situation where an individual engages a general contractor to construct a home, Tennessee law views the general contractor as the consumer of the materials he purchases in order to construct the project. In Townsend Electric Co. v. Evans, 193 Tenn. 536, 246 S.W.2d 967 (1952), the court cited with approval the decisions by the courts of other States in holding that the sales of materials to the contractor in that case were properly considered as sales to a consumer subject to the sales tax. In Townsend Electric Co. the court quoted with approval the following reasoning in a decision by the Louisiana Supreme Court (246 S.W.2d at 970): [A contractor's] undertaking is to deliver to his obligee some work or ediffice or structure, the construction of which requires the application of skill and labor to these materials so that, when he finishes his task, the materials purchased are no longer to be distinguished, but something different has been wrought from their use and union. The contractor *708 has not resold but has consumed the materials. Sales to contractors are sales to consumers * * *. See also Rule 1320-5-1-.07, Tenn. Sales and Use Tax Rules and Regulations. [6] However, we do not agree with respondent's contention that simply because the materials were purchased on his account, Mr. Hill under Tennessee law was the consumer of the materials purchased. The resolution of the issue as to whether Mr. Hill was actually an agent of petitioner and therefore not the consumer, is to be based upon the factual circumstances presented in the instant case. In Carbide & Carbon Chemicals Corp. v. Carson,192 Tenn. 150, 239 S.W.2d 27, 31 (1951), the court stated: The distinctions between an independent contractor and an agent are not always easy to *709 determine, and there is no uniform rule by which they may be differentiated. "Generally the distinction between the relation of principal and agent and employer and independent contractor is based on the extent of the control exercised over the employee in the performance of his work, he being an independent contractor if the will of the employer is represented only by the result, but an agent where the employer's will is represented by the means as well as the result." 2 C.JS., Agency, sec. 2, p. 1027. In United States v. Boyd,211 Tenn. 139, 363 S.W.2d 193 (1962), affd. on another ground 378 U.S. 39 (1964), the court held that since a contractor engaged to construct facilities for the Atomic Energy Commission was the purchasing agent of the United States for the materials, no sales tax could be imposed because to do so would be to subject the Federal Government to a State tax. In making such holding, the court in United States v. Boyd,supra (363 S.W.2d at 200), stated that-- The decision of agency or lack of agency does not necessarily rest on these latter decisions. The mere placing of terms such as agent or independent *710 contractor in the contract does not make them such in law.The surrounding facts and circumstances determine the relationship. Accordingly, whether petitioner rather than Mr. Hill was the consumer of the materials purchased depends upon facts present in the instant case. United States v. Boyd,supra at 200; Carbide & Chemicals Corp.,supra at 31. It is petitioner's contention that he was the actual contractor of the entire house. Petitioner asserts that Mr. Hill only assisted him in the work as an adviser or consultant. Petitioner contends that with respect to materials purchased on Mr. Hill's account, Mr. Hill was merely a purchasing agent or a mere conduit and that petitioner was the actual purchaser of the materials. We do not accept petitioner's contention that he was the actual contractor for the home's entire construction. Mr. Hill's fee of cost plus 12 percent, although smaller than his normal fee, is larger than one would expect to be charged by a person functioning merely in an advisory capacity. Moreover, petitioner in his own testimony acknowledged that Mr. Hill supervised certain phases of the construction while he supervised the *711 others.[7] The record shows that petitioner did not possess the expertise needed to be the contractor of the initial phases of the home's construction. Although petitioner may have been on the construction site and discussed the work being done with Mr. Hill, it was Mr. Hill who controlled the work done in these initial phases of construction, such as the grading work needed for the home's foundation, the pouring of concrete footings and the laying of concrete blocks for the home's foundation, and the ordering of the materials to construct the basic shell of the home. Mr. Hill was the contractor of these phases of construction and was the consumer of the materials purchased for such phases of construction. [8] Mr. Hill's role in purchasing these materials was not that of a purchasing agent or a mere conduit. Mr. Hill, not petitioner, was the actual consumer of the materials. Essentially the arrangement entered into by petitioner and Mr. Hill was that Mr. Hill would undertake the construction of the basic shell of the home; however, at some point petitioner did take over and serve as the contractor for the remaining work needed to finish the home. *712 We agree that at this point petitioner became his own contractor for the remaining work required. Petitioner, as a contractor of such work, purchased the materials needed in such construction. Although the materials were purchased by using Mr. Hill's account with various suppliers, Mr. Hill served only as a purchasing agent or a mere conduit. Petitioner desired to take advantage of any available discounts. Because Mr. Hill in his business purchased a large volume of construction materials, suppliers of such materials were willing to extend Mr. Hill quite favorable discounts. Obviously, these suppliers would not have been as willing to extend similar discounts to petitioner. Thus, to make sure of receiving a discount petitioner, when he ordered materials, charged them to Mr. Hill's account. In the instant case, petitioner takes the position that he was the contractor for all the work, whereas respondent takes the position that Mr. Hill was the contractor for all of the work. As discussed above, neither of these extreme positions is correct. We must therefore determine in what part of the work petitioner was his own contractor. Although petitioner might have testified more *713 fully as to the phases of the construction that he supervised and the phases of the construction Mr. Hill supervised, he failed to do so. Weighing heavily against petitioner, since this inexactitude is of his own making, we have determined that, with respect to the construction remaining after the house was sheetrocked, petitioner served as his own contractor. The record shows that at such point Mr. Hill left the remaining finishing work to be handled by petitioner. Mr. Hill in fact testified that at the time he believed that petitioner had sufficient knowledge of construction techniques to handle the supervision of the remaining work. The invoices submitted by petitioner to substantiate the sales tax paid with respect to the materials used in the home's construction indicate that on or about October 20, 1977, the sheetrock work on the house was completed. October 20, 1977, is the date on the bill submitted by the subcontractor who installed the drywall or sheetrock. Doing the best we can on this record, we estimate that any materials purchased on or after the October 20, 1977, date would be used in construction on which petitioner was the contractor. The sales tax paid on or *714 after such date on purchases using Mr. Hill's account was in the total amount of $410.82. We find, therefore, that petitioner has substantiated and is entitled, under section 164, to a deduction for sales tax consisting of the following: (1) The amount allowed for 1977 under respondent's sales tax tables, (2) $85 for the sales tax paid by petitioner on the purchase of the truck, (3) $518.30 in sales tax paid on the materials billed to and paid for directly by petitioner, and (4) $410.82 for sales tax on materials used in construction in which petitioner was his own contractor. This $929.12, composed of the $518.30 and $410.82, is of course in lieu of the $736.64 allowed by respondent in his notice of deficiency. Petitioner lastly argues that he should be allowed a deduction for the entire amount of sales tax paid with respect to purchases of materials used in the construction of his home, regardless of whether or not Mr. Hill is found to be the consumer of some of the materials, because the instructions contained in respondent's publication, the 1976 "Your Federal Income Tax," are misleading. Petitioner seems to contend that if he had known that he could obtain a deduction for *715 the entire amount of sales tax paid with respect to materials used in constructing the home by arranging to have such materials billed to and paid for directly by himself, he would have so arranged the purchases of the materials.It is well established, however, that respondent cannot be estopped by statements contained in informal publications. Green v. Commissioner,59 T.C. 456, 458 (1972).
Moreover, we do not view the statements contained in the 1976 "Your Federal Income Tax" to be misleading. In order for petitioner to receive a deduction for sales tax under section 164, the tax must have both been paid by and imposed upon him. Accordingly, we find no basis upon which to allow petitioner a larger sales tax deduction than the amount we have found above. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩
2. The $1,406.25 amount for which respondent allowed a deduction was arrived at as follows: $ 584.61
amount deductible under sales tax
tables
85.00
sales tax paid by petitioner on a
truck
736.64
25 percent of the balance of the
amount claimed as a deduction on
the return
$1,406.25
The parties agree that the $736.64 representing 25 percent of the balance of the amount claimed by petitioner as a deduction for sales tax was respondent's estimate of the amount of sales tax on materials for petitioner's home which were purchased directly by petitioner.↩
3. Tenn. Code Ann. sec. 67-3020(a) (1976), states as follows: 67-3020. Collection and payment by retailers.--(a) The Commissioner may by regulation provide that the amount collected by the retailer from the consumer in reimbursement of the tax be displayed separately from the list price, the price advertised in the premises, the marked price, or other price on the sale check or other proof of sale. ↩
4. This rule provides that the sales tax does not apply to casual and isolated sales by persons who are not or who have been deemed by the Commissioner not to be engaged in the business of selling tangible personal property.↩
5. Respondent concedes that the sales tax with respect to items which were billed to and paid for directly by petitioner is deductible under sec. 164, but contends that his allowance of $736.64 of the amount claimed by petitioner as a sales tax deduction with respect to materials purchased directly by petitioner is more than sufficient to cover this amount. The record shows that the sales tax paid on such items totals up to an amount of $518.30. Respondent's concession is in line with the position stated in Rev. Rul. 58-292, 1958-1 C.B. 106. The ruling states that where an individual acts as his own contractor or employs a contractor, but has the materials billed to him, the retail sales tax may, to the extent that such tax is paid by the individual, be deducted by him under sec. 164↩, provided that he itemizes his deductions.
6. Rule 1320-5-.07, Tenn. Sales and Use Tax Rules and Regulations, provides: (1) Contractors engaged in constructing or improving real property, whether on a lump sum or a cost-plus basis, are purchasers and consumers of the materials used by them, and are required to pay the Sales or Use Tax on such materials or equipment purchased or imported into this State for use in connection with their contract.↩
7. Petitioner, on direct examination, testified in this regard: Q So, would you describe this as a cost plus contract? A Uh, yes, for some phases, cost plus as it applied to some phases of the construction. Q Only on those phases he was involved in? A Yes. ↩
8. We do not accept petitioner's argument that, since he was present on the homesite for longer amounts of time than Mr. Hill, he, rather than Mr. Hill, was the contractor of these phases of the construction. Mr. Hill was the one actually controlling the work being done. Much of the work was done by subcontractors. Because Mr. Hill knew such subcontractors to be reliable and capable of doing competent work, Mr. Hill did not spend time on the jobsite overseeing each subcontracting job from start to finish. As to much of the subcontracting work, Mr. Hill would confine himself to inspecting the work either periodically, to see that it was proceeding satisfactorily, or upon completion. Mr. Hill, nevertheless, was the person controlling the performance of the work needed. To further support his argument that he was the contractor of all phases of the home's construction, petitioner at trial offered the testimony of Mr. Hill. In such testimony, Mr. Hill stated that he had not given a warranty on petitioner's home. In their oral agreement petitioner and Mr. Hill may not have discussed Mr. Hill's warranty and it may be in most of Mr. Hill's written cost plus contracts a warranty was provided for. However, after weighing the evidence as a whole, we conclude that Mr. Hill was responsible for the work on which he served as the contractor, but was not similarly responsible for the work for which petitioner acted as contractor.↩