Florence L. ROGERS, and Joe W. Stout and Eudora Stout, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 7991.

United States Court of Appeals Fourth Circuit.

Argued Jan. 12, 1960.

Decided July 13, 1960.

234

N. A. Townsend, Jr., Raleigh, N. C. (J. O. Tally, Jr., Fayetteville, N. C., Herman Wolff, Jr., Poyner, Geraghty, Hartsfield & Townsend, Raleigh, N. C., and Tally, Tally & Taylor, Fayetteville, N. C., on the brief), for petitioners.

Stanley Worth, Washington, D. C. (Edward S. Smith, and Blair, Korner, Doyle & Worth, Washington, D. C., on the brief), amici curiae and as counsel for R. A. Bryan and wife and C. B. McNairy and wife in No. 8032.

Rita E. Hauser, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

## I

The principal question tendered is the tax consequence of the payment by a partnership to some of its partners of salaries, out of borrowed funds, which results in an impairment of the partnership capital account. Under the particular circumstances, the Tax Court held that the salaries were taxable to the recipients except to the extent they represented a return of capital actually contributed, and that the partners could deduct as business losses only the amount of their contributed capital.[1] We agree, though we question the conclusion that the payments impaired the capital.

In November 1951, five residents of Fayetteville, North Carolina, organized a partnership for the purpose of constructing rental housing projects. They contributed nominal capital of $2,500, Florence L. Rogers, contributing 30%, Joe W. Stout, C. B. McNairy and Raymond Bryan, 20% each, and Terry A. Lyon,

1. 31 T.C. 1199.

10%. They agreed to share profits and bear net losses in the same proportions. The agreement provided, however, that Stout, McNairy and Bryan were to have particular responsibilities for the construction work in contemplation and that for their services they should receive salaries. Stout's salary was to be 5% of the partnership's construction costs, while McNairy's and Bryan's, each, were to be 2½% of such costs.

The partnership borrowed $1,075,700 from a bank, acquired a tract of land from Mrs. Rogers, one of the partners, for $5,600 and proceeded to improve the land and to construct rental housing units upon it. The first units were completed and occupied in April 1952. The entire project was completed and fully occupied on July 1, 1952.

On September 1, 1952, the day after the close of the partnership's fiscal year on August 31, 1952, the partners conveyed the completed project to a newly organized corporation in exchange for the stock of that corporation. As a part of the exchange, the corporation assumed and agreed to pay the liabilities of the partnership attributable to the project, including the indebtedness to the bank of $1,075,700.

During the partnership's fiscal year ended August 31, 1952, the partnership paid salaries to the partners, Stout, McNairy and Bryan, aggregating $99,349.-96. This amount was ten per cent of the construction costs incurred during the year and was paid to those three partners in accordance with the provision in the partnership agreement.

On its partnership return for fiscal 1952, the partnership reported a net loss of $15,342.57. The salaries paid were neither capitalized nor expensed, but were added to the reported operating loss in reconciling the partners' capital accounts. That reconciliation, as reported, was as follows:

| | Capital Acct. At Beginning of Year | Partners' Shares of Ordinary Net Income | Withdrawals | Capital Acct. At End of Year |
|---|---|---|---|---|
| Rogers | $ 750 | $(34,407.75) | ——— | $ (33,657.75) |
| Lyon | 250 | (11,469.25) | ——— | (11,219.25) |
| Stout | 500 | 26,736.47 | $49,674.98 | (22,438.51) |
| Bryan | 500 | 1,898.98 | 24,837.49 | (22,438.51) |
| McNairy | 500 | 1,898.98 | 24,837.49 | (22,438.51) |
| | $2,500 | $(15,342.57) | $99,349.96 | $(112,192.53) |

On his personal return for the calendar year, 1952, the taxpayer, Stout, reported as income from the partnership only $26,736.47. Bryan and McNairy each reported only $1,898.98. In each instance, the reported amount is that shown on the partnership return in the reconciliation of the capital accounts as his share of ordinary net income. In each instance, the salary actually received was reduced by $22,938.50, being the individual's proportionate part of the total of the reported loss and of the salary payments.[2] Consistently, Mrs. Rogers, who received no partnership salary, claimed as a deduction from ordinary income a partnership loss of $34,-407.75, being her proportionate part of the salary payments added to the reported operating loss.

■ The taxpayers take as their premise the principle, well-established

2. In the case of Stout, who actually received $49,674.98, the computation is

$49,674.98 - 20% ($15,342.57 + $99,349.-96) = $26,736.47.

under the Internal Revenue Code for 1939, that partnership salaries are not deductible expenses in computing partnership distributable net income, but are treated as a device for reallocating distributable net income among the partners. As a concomitant of this principle, it was held that when distributions as salaries exceeded partnership distributable net income, the recipient was not to be taxed to the extent his receipts represented a return of his own contributed capital and that each partner could deduct, as a business loss, the diminution of his capital by reason of salary distributions to other partners.[3] The taxpayers seek to bring themselves within these premises by reasoning that the proceeds of a loan which they were obligated to repay were their contributed capital, and it was diminished by the disbursements.

The Tax Court held, however, that these established principles should not be extended to a case where the loss sought to be deducted is more technical than real. The Tax Court correctly observed that, while the partners may have had a technical liability for the debt, at least until September 1, 1952, it does not appear that it was ever intended that they should pay it. The corporation's assumption of the debt on September 1, 1952 suggests that no part of the debt will be paid by the partnership or by the partners as individuals and that was the plan from the outset. If the obligation to repay the borrowed funds is not, in a practical sense, that of the individual partners, the proceeds of the loan need not necessarily be regarded as their contributed capital.

Moreover, we doubt the existence of any real loss. The construction work could not have been accomplished without the services and the assistance of a professional builder. The salaried partners supplied those services. The product of those services was represented by the completed project. That project was worth no less to the partnership because the builders obtained their fees in the form of partnership salaries measured by construction costs. Such a fee, similarly computed, paid to a builder who was a stranger to the partnership would have been capitalized on the partnership's books and would have increased by that amount the book value of the completed project.

Indeed, the primary contention of the Commissioner before the Tax Court was that the salary disbursements occasioned no loss. The Tax Court felt the contention inconsistent with a stipulation that the disbursements were made as salary in accordance with the partnership agreement rather than under a separable contract of employment. Such inconsistency would exist, however, only if we accept as applicable the usual rule, prior to the Revenue Act of 1954, for the treatment of partnership salaries in excess of partnership net income. That rule has logical consistency when applied to a case in which the compensated services were rendered primarily for the production of current income. It loses that quality if applied to a case in which the compensated services were rendered solely in aid of the construction of a capital asset. If applicable here, the usual rule would permit the partners to deduct from their ordinary income in the current year the entire amount of what, from every substantive point of view, is a portion of the cost of a capital asset. The usual rule applicable to salaries for income-producing services may very well give way in the face of the rule which requires the capitalization of the cost of capital assets.

Whether these disbursements be treated as anticipatory withdrawals of future earnings, as the Tax Court treated them, or as capital expenditures, makes little difference in the tax liabilities of these taxpayers for the year in question. What is now done will bear importantly upon their tax liabilities in subsequent years, however. The Commissioner has already asserted a tax based upon an

---

3. Augustine M. Lloyd, 15 B.T.A. 82; Regs. 118 § 39.183–1(b); G.C.M. 6582, VIII–2 C.B. 200.

addition to the partners' income of an amount equal to the excess of the liabilities assumed by the corporation over the partnership's basis of the transferred assets, a basis which has not been increased by the amount of these disbursements. If they be anticipatory withdrawals of future earnings, the partners will be entitled to exclusions from income, deductions or credits in future years if the partnership has earnings, or if they repay the bank loan. On the other hand, if the disbursements be treated as part of the cost of capital assets, the partnership, until August 31, 1952, and the corporation thereafter, will be entitled to additional depreciation allowances.

Since the Tax Court has not considered the alternative ground of decision suggested here and a shift to another basis of decision will have important consequences, we think the case should be remanded to the Tax Court. After the parties have been allowed an opportunity to file supplemental pleadings and offer additional evidence, a basis for a more enlightened choice between the two alternatives will be provided. We hold only that the suggested alternative was not foreclosed by the stipulation, but leave open the question whether it may be foreclosed by reason of other facts or considerations which may be developed in the Tax Court.

## II

▮ A second question presented is the deductibility on the partnership return of sales taxes paid by vendors of materials and articles, which became in- corporated in the housing project, to the extent that the vendors separately stated such taxes on their invoices. We agree with the Tax Court that such taxes were part of the cost of the goods and were required to be capitalized.

Under the General Statutes of North Carolina, § 105–165, which was in effect during the period in question, a tax is "levied as a license or privilege tax for engaging \* \* \* in the business of a \* \* \* 'retail' merchant \* \* \*." The tax is three per cent of the retailer's sales. He may add the tax to the price of the goods and collect it from the purchaser, and the Legislature declared its purpose that the tax should be passed on to the consumer. The retailer is not required to do so, however, though he may not advertise that he will absorb the tax.

It is clear from the language of the statute and the decisions of North Carolina's Supreme Court,[4] that the tax is imposed upon the retailer. The purchaser to whom the tax is passed on may not deduct it under § 23(c) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(c) (1), for it was not imposed immediately upon him.

The taxpayers argue that since it was clearly intended that the consumer should bear the economic burden of the tax, distinctions based upon technicalities of its imposition exalt the form and ignore the substance of the tax. The argument might be appealing were it not for the fact that Congress preserved the distinction when, by § 122 of the Revenue Act of 1942, it added § 23(c) (3) to the Code.[5] That section express-

---

4. Leonard v. Maxwell, 216 N.C. 89, 3 S.E. 2d 316; Henderson v. Gill, 229 N.C. 313, 49 S.E.2d 754.

5. "(3) Gasoline and retail sales taxes. In the case of a tax imposed by any State, Territory, District, or possession of the United States, or any political subdivision thereof, upon persons engaged in selling tangible personal property at retail, or upon persons selling gasoline or other motor vehicle fuels either at wholesale or retail, which is measured

by the gross sales price or the gross receipts from the sale or which is a stated sum per unit of such property sold, or upon persons engaged in furnishing services at retail, which is measured by the gross receipts for furnishing such services, if the amount of such tax is separately stated, then to the extent that the amount so stated is paid by the consumer (otherwise than in connection with the consumer's trade or business) to his vendor such amount shall be allowed as

ly permits such a purchaser to deduct the retail sales tax imposed upon his vendor if the tax is separately stated and is paid by the purchaser, but purchases in connection with the purchaser's trade or business are expressly excluded from the benefits of this section. The exclusion of business purchases was clearly with the intention that, as to them, the tax should be treated as part of the cost of the goods and expensed or capitalized as part of such cost, depending upon use of the goods. The sales tax paid on these purchases of capital assets, therefore, should have been capitalized as part of their cost.

Reference is also made to § 24(a) (7) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 24(a) (7). That section provides that no deduction shall be allowed in respect of taxes which the taxpayer elects to capitalize under applicable regulations. The purpose of the section is to deny to a taxpayer a deduction in the current year if he elects to add the amount of an otherwise deductible tax to his cost basis. It gives a taxpayer no option to expense a disbursement he is required to capitalize. Nothing in § 24 (a) (7) suggests that the business purchase exception in § 23(c) (3) was intended to require the capitalization of only those deductible taxes which a taxpayer might elect to capitalize.

### III

Finally, the taxpayer, Stout, sought to carry back to 1952 a claimed partnership loss in 1953. His 1953 income tax liabilities were the subject of a separate proceeding then pending in the Tax Court, but he complains that the Tax Court did not find in this proceeding that he sustained a partnership loss in 1953.

We think the Tax Court was not required to try the issues in another, separate proceeding before trying and disposing of the separable issues raised in this proceeding. In fairness, nothing should be done here to cut off his right

a deduction in computing the net income of such consumer as if such amount con-

to carry back to 1952 any loss which may be determined, ultimately, for 1953. What is done on the remand of this case may resolve the 1953 issues. If it does not, we are assured that Stout has filed a timely claim for refund for 1952 which will protect his carry-back right if he should prevail in his contention that he sustained a loss in 1953.

Affirmed in part and remanded for further proceedings.

stituted a tax imposed upon and paid by such consumer."