JERRY M. PETTY AND AUDREY PETTY, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11454–79.    Filed August 24, 1981.

*Joseph Warren III,* for the petitioners.
*Dean F. Chatlain,* for the respondent.

STERRETT, *Judge*: In his notice of deficiency dated May 15,
1979, respondent determined a deficiency in petitioners'
Federal income tax of $1,755.50 for the 1976 calendar year.
The sole issue for decision is whether, in 1976, the petitioners
are entitled to a sales tax deduction under section 164(a)(4),
I.R.C. 1954, of $3,511.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The
stipulation of facts, together with the exhibits attached
thereto, is incorporated herein by this reference.

Petitioners Jerry M. and Audrey Petty, husband and wife,
resided in Charlotte, N. C., at the time the petition herein was
filed. Petitioners timely filed their joint Federal income tax
return for the calendar year 1976 with the Internal Revenue
Service Center in Memphis, Tenn.

In September 1973, the petitioners purchased land in
Charlotte, N.C. In June 1974, petitioners entered into a
contract with Sherman Pardue & Co. (hereinafter architect)
for architectural services to be rendered in connection with
the construction of a residence on this land. The contract with
the architect covered design, bid solicitation, and construction
supervision. More specifically, the contract stated:

1.1.15 Based on such observations at the site and on the Contractor's
Applications for Payment, the Architect shall determine the amount owing
to the Contractor and shall issue Certificates for Payment in such amounts.
The issuance of a Certificate for Payment shall constitute a representation
by the Architect to the Owner, based on the Architect's observations at the

site * * * and on the data comprising the Application for Payment, that the Work has progressed to the point indicated; that to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents * * * ; and that the Contractor is entitled to payment in the amount certified. * * *

In September 1975, the petitioners entered into a contract with Erskine Richardson Construction Co. (hereinafter contractor) for construction of the residence. Under the terms of the contract, the contractor agreed to furnish materials and labor necessary for building the residence. Petitioners agreed to reimburse the contractor for the "cost of work" plus a contractor's fee of $20,000. The contract also provided an incentive bonus equal to one-third of savings realized below $195,000. The contract defined the term "cost of work" to include, inter alia:

9.1.10 Sales, use or similar taxes related to the Work and for which the Contractor is liable imposed by any governmental authority.

The contract also provided for a maximum cost to the petitioners of $195,000, subject to adjustments for changes in the plans for construction of the residence.

On November 19, 1975, petitioners entered into a construction loan agreement with Mutual Savings & Loan Association (hereinafter bank) to finance the construction costs. The loan proceeds were disbursed on a monthly basis to the contractor and/or the petitioners [1] only after: (1) The contractor presented invoices setting forth the materials purchased, the price of the materials, and the sales tax associated therewith;[2] (2) the architect presented his "Application and Certificate of Payment" certifying that the appropriate construction had been

---

[1] The payees of the bank's checks were either: (1) The contractor or (2) the contractor and one or both of the petitioners. Approximately one-half of the checks issued by the bank contained the following legend on the reverse side:

"The funds received and advanced by this check are secured under the deed of trust recorded in Book *3803* at Page *0685* in the *Mecklenburg* County Public Registry, and all funds advanced by this check shall be used solely for construction of improvements on property described in said deed of trust."

Petitioner Audrey Petty signed as borrower and the president of Erskine Richardson Construction Co. signed for the contractor.

[2] The contractor was designated as the purchaser of these materials on the various invoices received in evidence.

completed; and (3) the bank had confirmed that the construction had progressed to the level claimed.

On their 1976 Federal income tax return, petitioners claimed a $4,428.46 itemized deduction for sales taxes incurred in connection with the construction of their personal residence. Of this amount, $3,511 represented sales taxes imposed on purchases of materials, supplies, fixtures, and equipment and reflected on invoices billed directly to the contractor, and the remainder represented sales taxes paid by the petitioners on their separate purchases for the residence. In his notice of deficiency, respondent disallowed $3,511 of the claimed sales tax deduction on the stated ground that it represented "sales taxes on materials used in the construction of your personal residence for which the general contractor was liable."

## OPINION

The sole issue for our consideration is whether petitioners are entitled to deductions under section 164 for sales taxes incurred in connection with the construction of their residence, in excess of that amount allowed by respondent.

Section 164(a)(4) allows a taxpayer a deduction for State and local general sales taxes imposed on the taxpayer and paid within the taxable year. *Armentrout v. Commissioner*, 43 T.C. 16, 19 (1964). Where the sales tax is imposed on the seller but is "separately stated" and paid by the consumer (in other words, passed on to the consumer), the sales tax shall be treated as being imposed on the consumer. Sec. 164(b)(5).[3] The regulations define the term "consumer" to mean "the ultimate user or purchaser." Sec. 1.164–3(e)(2), Income Tax Regs. However, purchases in connection with a consumer's trade or business are expressly excluded from the benefits of section 164(b)(5). The reasoning behind this exclusion was aptly summarized by the Fourth Circuit in *Rogers v. Commissioner*, 281 F.2d 233, 238 (4th Cir. 1960), affg. on this point 31 T.C. 1199 (1959), wherein the court stated: "The exclusion of business purchases was clearly with the intention that, as to them, the tax should be treated as part of the cost of the goods

[3]Sec. 164(b)(5) was amended in 1978 by the Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2777, but in a manner not material to the instant case.

and expensed or capitalized as part of such cost, depending upon use of the goods." In any event, Federal courts must turn to the statutory and case law of the State imposing the sales tax liability in determining upon whom the liability is imposed. *Armentrout v. Commissioner, supra* at 19.

In the instant case, petitioners engaged a contractor to build their residence. To this end, the contractor purchased various construction materials and equipment from suppliers. The invoices from the suppliers designated the contractor as the purchaser and specifically stated the amount of State and local sales taxes attendant thereto. In 1976, petitioners deducted $3,511 in sales taxes imposed as a result of these purchases.

Petitioners rely on two theories to justify their $3,511 sales tax deduction. First, petitioners claim that they were jointly and severally liable with the contractor for the subject taxes under N.C. General Statutes section 105–164.6(3). Because the sales taxes purportedly were paid with the construction loan proceeds, petitioners reason that they are entitled to the deduction for sales taxes incurred in connection with the contractor's purchases for their residence. Secondly, petitioners insist that the contractor acted as their agent in the acquisition of the materials for the residence. Pursuant to this agency theory, petitioners contend that they were the "consumers" within the meaning of section 164(b)(5).

The strength of petitioners' first theory lies in their claim that the North Carolina statute imposed the sales tax liability jointly against the contractor and themselves. In support of that proposition, petitioners rely on N.C. General Statutes section 105–164.6(3), which imposes joint liability on a contractor and an owner for a tax on the "storage, use or consumption" of building materials in North Carolina, whether purchased within or without said State.[4] We note that the

---

[4]N.C. Gen. Stat. sec. 105–164.6(3) provides:

Sec. 105–164.6. *Imposition of tax.* An excise tax is hereby levied and imposed on the storage, use or consumption in this State of tangible personal property purchased within and without this State for storage, use or consumption in this State, the same to be collected and the amount to be determined by the applicaiton of the following rates against the sales price, to wit: * * *

(3) There is hereby levied and there shall be collected from every person, firm, or corporation, an excise tax of three percent (3%) of the purchase price of all tangible personal property purchased or used which shall enter into or become a part of any building or other kind of structure in this State, including all materials, supplies, fixtures and equipment of

aforementioned section appears under the heading "Part 3. Use Tax."

Respondent contends that the use tax is not involved in this proceeding. Rather, respondent claims that the taxes at issue herein were State retail sales taxes (3 percent), imposed by N.C. Gen. Stat. section 105–164.4,[5] and a corresponding local sales tax (1 percent).[6] In any event, the parties seemingly agree that our decision with respect to the State tax will be determinative of the nature of the local tax.

The North Carolina sales tax is a privilege or license tax on retailers, not a tax on consumers. N.C. Gen. Stat. sec. 105–164.4; *Piedmont Canteen Service, Inc. v. Johnson*, 256 N.C. 155, 123 S.E.2d 582, 585 (1962); *Fisher v. Jones*, 15 N.C. App. 737, 190 S.E.2d 663, 665 (1972). Even so, the intent of North Carolina law is to have the sales tax passed on to the consumer by retailers. N.C. Gen. Stat. sec. 105–164.7; *Long Manufacturing Co. v. Johnson*, 264 N.C. 12, 140 S.E.2d 744, 747 (1965). In *Johnston v. Gill*, 224 N.C. 638, 32 S.E.2d 30, 33 (1944), the Supreme Court of North Carolina described the sales tax as a "tax on the freedom of purchase" and the use tax as a "tax on the enjoyment of that which was purchased." The court went on to state that the use tax is not a sales tax but is a—

compensating tax to place North Carolina manufacturers and merchants on a parity with nonresidents doing business in the State. Neither its purpose nor effect is to burden interstate commerce. Instead, it prevents undue discrimination against local retailers. Its chief function is to prevent the

---

every kind and description which shall be annexed thereto or in any manner become a part thereof. Provided, however, the taxes levied in this section shall be levied against the purchaser of the articles named. If purchases of building materials that are not exempt from tax are made by a contractor there shall be joint liability for the tax against both contractor and owner, but the liability of the owner shall be satisfied if affidavit is required of the contractor, and furnished by him, before final settlement is made, showing that the tax herein levied has been paid in full.

[5]N.C. Gen. Stat. sec. 105–164.4 provides, in relevant part, as follows:

Sec. 105–164.4. *Imposition of tax; retailer.* There is hereby levied and imposed, in addition to all other taxes of every kind now imposed by law, a privilege or license tax upon every person who engages in the business of selling tangible personal property at retail, renting or furnishing tangible personal property or the renting and furnishing of rooms, lodgings and accommodations to transients, in this State, the same to be collected and the amount to be determined by the application of the following rates against gross sales and rentals, to wit:

(1) At the rate of three percent (3%) of the sales price of each item or article of tangible personal property when sold at retail in this State * * *

[6]Counties and municipalities of North Carolina were granted the authority to levy a 1-percent sales and use tax pursuant to N.C. Gen. Stat. secs. 105–463 through 105–474.

evasion of the North Carolina sales tax by persons purchasing tangible personal property outside of North Carolina for storage, use, or consumption within the State. Thus it prevents unfair competition on the part of out-of-state merchants. It and our sales tax law, * * * taken and applied together, provide a uniform tax upon either the sale or use of all tangible personal property irrespective of where it may be purchased. That is, the sales tax and the use tax are complementary and functional parts of one system of taxation. [32 S.E.2d at 33.][7]

Because the two are complementary rather than duplicative taxes, the use tax is reduced by sales taxes paid by the purchaser with respect to the same personal property. N.C. Gen. Stat. sec. 105–164.6(4).

Turning to the instant facts, we are compelled to agree with respondent; that is, the State sales tax provision, not the use tax provision, is the controlling section. "[T]he taxable event for assessment of the sales tax occurs at the time of sale and purchase within the state. G.S. § 105.164.4(1)." *Colonial Pipeline Co. v. Clayton*, 275 N.C. 215, 166 S.E.2d 671, 677 (1969). The use tax does not take effect until possession is transferred and the "use" (storage, use, or consumption) begins. 166 S.E.2d at 677; *Atwater-Waynick Hosiery Mills, Inc. v. Clayton*, 268 N.C. 673, 151 S.E.2d 574, 576 (1966). Therefore, the sales tax obligation of the contractor's suppliers arose at the time of the sale and purchase. The suppliers passed the sales tax obligation on to the contractor by separately stating the amount of the sales tax on their invoices. Consequently, there was no use tax liability as a result of the credit against use taxes for sales taxes paid on said property.[8] N.C. Gen. Stat. sec. 105–164.6(4).

Having determined that we are presented with sales taxes which are imposed on the supplier and not use taxes imposed jointly on the contractor and petitioners, we turn to petitioners' second theory of deductibility. Petitioners argue that they

---

[7]See also *Colonial Pipeline Co. v. Clayton*, 275 N.C. 215, 166 S.E.2d 671, 676–677 (1969); *Robinson & Hale, Inc. v. Shaw*, 242 N.C. 486, 87 S.E.2d 909, 910–911 (1955).

[8]While there is some evidence to suggest that the contractor made purchases outside of North Carolina, there is no evidence to suggest that petitioners or the contractor paid use tax with respect to these purchases. Petitioners have the burden of establishing their entitlement to deduction for taxes. Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners have failed to prove that they paid use taxes with respect to these out-of-State purchases. Accordingly, we find that they are not entitled to a deduction for use taxes on the aforementioned purchases.

are entitled to the subject sales tax deduction because the contractor was their agent and they were the ultimate purchasers of the material. Respondent, on the other hand, claims that the contractor was not an agent of the petitioners; rather, the contractor was the purchaser and consumer of the materials.

In support of their argument, petitioner Audrey Petty testified that the contractor did not have money to pay the bills with respect to the residence. Consequently, she claimed that the contractor used the construction loan proceeds to pay material suppliers. In addition, a bank employee testified that the construction loan proceeds issued to the contractor were to be used to pay costs incurred in connection with the residence. Petitioners point out that the legend on the reverse side of several bank checks corroborates such testimony. Based on this evidence, petitioners posit that the funds used to pay the contractor's costs, including sales taxes, were funds from the construction loan. As such, petitioners claim that they were the ultimate purchasers or consumers and the contractor was merely an agent or conduit for their funds enroute to suppliers.[9] Completing the scenario, petitioners reason that they were the consumers within the meaning of section 164(b)(5), the sales taxes are to be treated as having been imposed on them, and they are entitled to the subject sales tax deduction under section 164(a).

We begin with the well-established legal principle that an agency relationship has two essential ingredients: (1) The agent's express or implied authority to act for the principal, and (2) the principal's right to control the agent's conduct. *Sharpe v. Bradley Lumber Co.*, 446 F.2d 152, 153 (4th Cir. 1971), cert. denied 405 U.S. 919 (1972); *Partin v. Carolina Power & Light Co.*, 40 N.C. App. 630, 253 S.E.2d 605, 611 (1979), and the cases cited therein. Where the principal controls the manner in which work is completed by the agent, the doctrine of respondent superior causes the principal to be liable for the tortious acts of its agent within the scope of his

---

[9]Petitioners also argue that the North Carolina vendor's lien statute creates a so-called "implied agency." N.C. Gen. Stat. sec. 44A–17 and 18. Suffice it to say that such statute is a protective or security device for the vendor and, in this context, does not create an agency relationship between the contractor and petitioners.

employment. *Vaughn v. North Carolina Department of Human Resources*, 296 N.C. 683, 252 S.E.2d 792, 795 (1979).

In the case at bar, the contractor was engaged to perform the work required by the contract documents; that is, to build a residence. The contractor agreed to, and in fact did, furnish workmen and materials and exercise his best skill and judgment in constructing the residence. Petitioners agreed to reimburse the contractor for its costs, including sales taxes, plus pay a contractor's fee. A fair inference can be drawn from these facts that the contractor was not controlled by petitioners, but used its own experience and judgment to carry out independently its duties under the contract. We note that the contract did not grant petitioners the right to control the contractor in the performance of its duties therewith; neither did it grant the contractor the right to act in the name of petitioners. Moreover, there was no other reliable evidence to suggest that petitioners controlled, or had the right to control, the contractor in any meaningful respect.

In addition, the contract stated that costs due to the negligence of the contractor or its agents were not reimbursable costs. The contract also provided for a maximum cost to the petitioners beyond which costs presumably would be absorbed by the contractor. Thus, not only did petitioners lack the requisite control but they also had limited liability, a factor that is uncharacteristic of a principal/agent arrangement. Based upon the foregoing, we are convinced that the contractor was not an agent of petitioners.

As a consequence, we agree with respondent's position. The contractor was designated to be the purchaser by its suppliers. As purchaser, the contractor incurred liabilities for sales taxes at the time of the purchases. Such sales tax liabilities were part of its costs of work under the contract. *Colonial Pipeline Co. v. Clayton*, 166 S.E.2d at 677. Being part of the cost to construct the residence, the contractor's sales taxes paid on these purchases were required to be capitalized. Sec. 164(b)(5); *Rogers v. Commissioner*, 281 F.2d 233, 238 (4th Cir. 1960). Petitioners were one party removed from the purchase transactions, incurring a lump-sum liability under the contract rather than numerous liabilities arising from the contractor's

many purchases in connection with its construction of the residence.[10] Accordingly, we hold that petitioners are not entitled to the subject sales tax deduction and respondent's position is sustained.

Based on the foregoing,

*Decision will be entered for the respondent.*

---

[10]See *Armentrout v. Commissioner,* 43 T.C. 16, 20–21 (1964). In *Armentrout,* we were faced with facts somewhat similar to those in the instant case. We found in that case that, pursuant to Florida law, the contractor was the ultimate consumer and was not an agent for the petitioners.