BENJAMIN W. WISE AND ROSEMARIE WISE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7769–77.    Filed February 22, 1982.

*Benjamin W. Wise*, pro se.
*Robert D. Kaiser* and *Chauncey W. Tuttle, Jr.*, for the respondent.

CHABOT, *Judge*: Respondent determined a deficiency in Federal individual income tax against petitioners for 1973 in

the amount of $454. The issue for decision is whether petitioners may deduct under section 164[1] sales taxes paid (or deemed paid) by a contractor on materials used in constructing an addition to petitioners' residence.

## FINDINGS OF FACT

Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference.

When the petition in this case was filed, petitioners Benjamin W. Wise and Rosemarie Wise, husband and wife, resided in Richland, Mich.

On or about February 5, 1973, petitioners entered into a contract with Wesley D. Graham (hereinafter sometimes referred to as Graham), a building contractor, for the construction of an addition to their residence. Under the contract, Graham agreed to build the addition to the residence and furnish all materials and perform all work according to plans, specifications, and details attached to the contract; petitioners agreed to pay Graham $5,000 "as a fixed contractors fee" plus "The *net* cost of all labor & material, all fixed overhead on labor, all sub-contracts, all permits and fees, & contractor's labor while he is directly engaged in construction labor."

Graham bought the building materials necessary for constructing the addition. He selected the structural materials. Items such as appliances, paneling, and bathroom fixtures were selected by one or both of petitioners, either alone or together with Graham. All materials bought, even those selected by one or both of petitioners, were charged to Graham's account and generally invoiced to Graham as buyer. The invoices generally required delivery of the material to petitioners' residence or contained a notation such as "Wise job" or a similar notation. Graham employed the workers, selected the subcontractors, and supervised the work. Neither petitioner held a builder's license or a building contractor's license from the State of Michigan during 1973, nor had they ever engaged in the business of building residential homes.

---

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable year in issue.

During 1973, Graham neither held a Michigan sales tax license nor paid any amounts to Michigan as sales tax collected upon retail sales.

Petitioners paid Graham $61,999.62 during 1973 towards their liability to him arising out of the contract. Of this, $1,268.27 represented sales taxes which were generally separately listed on the invoices to Graham and paid by Graham to his suppliers and sellers of the materials used to build the addition. The addition to the house was completed during 1973. Petitioners were on the cash basis for 1973.

### OPINION

Petitioners contend that they are entitled to deduct $1,268.27[2] as an amount separately stated as sales taxes and paid by them as consumers within the meaning of section 164(b)(5), under either section 1.164–3(e)(2), Income Tax Regs., or Michigan law. Respondent argues that petitioners are not entitled to the deduction because in determining who the State sales tax is imposed on and who is the consumer under section 164, the Court should look to Michigan law, which (he asserts) defines Graham as the "final buyer or consumer."

We agree with respondent's conclusion.

Section 164[3] provides for the deduction of State general sales taxes (sec. 164(a)(4)) imposed on the taxpayer (*Armentrout v.*

---

[2]On their Federal income tax return, petitioners deducted a total of $1,821.60 as general sales tax. Respondent disputes the deductibility of only $1,300 of this amount. Petitioners concede that, of this $1,300, they are not entitled to a deduction for $31.73.

[3]SEC. 164. TAXES.

(a) GENERAL RULE.—Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued:

| * | * | * | * | * | * | * |

(4) State and local general sales taxes.

| * | * | * | * | * | * | * |

(b) DEFINITIONS AND SPECIAL RULES.—For purposes of this section—

| * | * | * | * | * | * | * |

(2) GENERAL SALES TAXES.—

(A) IN GENERAL.—The term "general sales tax" means a tax imposed at one rate in respect of the sale at retail of a broad range of classes of items.

| * | * | * | * | * | * | * |

(5) SEPARATELY STATED GENERAL SALES TAXES AND GASOLINE TAXES.—If the amount of any general sales tax * * * is separately stated, then, to the extent that the amount so stated is paid by the consumer (otherwise than in connection with the consumer's trade or business) to his seller, such amount shall be treated as a tax imposed on, and paid by, such consumer.

*Commissioner*, 43 T.C. 16, 19 (1964); see *Magruder v. Supplee*, 316 U.S. 394, 396 (1942)) in respect of retail sales (sec. 164(b)(2)(A)). However, where a general retail sales tax is imposed on the seller but is "separately stated" and paid by the "consumer," section 164(b)(5) treats the tax as being imposed on the consumer for purposes of deduction under section 164 if certain requirements are met.[4]

Section 1.164–3(e), Income Tax Regs.,[5] elaborates on the required retail nature of such deductible taxes, for purposes of section 164(b)(5).

Where the State imposes its sales tax on the seller, the buyer who is granted a deduction by section 164(b)(5) is that buyer who has paid the seller in the transaction which the State has chosen to tax.[6]

Read thusly, section 164(b)(5) has the effect that, generally, a

---

The subsequent amendment of this provision by sec. 111(b) of the Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2777, does not affect the instant case.

[4]The Congress revised sec. 164 by sec. 207 of the Revenue Act of 1964, Pub. L. 88–272, 78 Stat. 19, 40–42. In H. Rept. 88–749, at 49, 51 (1963), 1964–1 C.B. (Part 2) 125, 173, 175, the basic rules are described as follows:

"Sales taxes, to be deductible under Federal law, must be either imposed upon the purchaser, or else be separately stated. * * *

\*       \*       \*       \*       \*       \*       \*

"As under present law, deductions may be taken for general sales taxes not only where they are imposed on the consumer as such, but also where they are separately stated and where the tax is in fact paid by the consumer."

The second of these excerpts also appears in S. Rept. 88–830, at 56 (1964), 1964–1 C.B. (Part 2) 505, 560.

[5]Sec. 1.164–3. Definitions and special rules.

For purposes of section 164 and sec. 1.164–1 to sec. 1.164–8, inclusive—

\*       \*       \*       \*       \*       \*       \*

(e) *Sales tax.* (1) The term "sales tax" means a tax imposed upon persons engaged in selling tangible personal property, or upon the consumers of such property, * * * which is a stated sum per unit of property sold or which is measured by the gross sales price or the gross receipts from the sale. The term also includes a tax imposed upon persons engaged in furnishing services which is measured by the gross receipts for furnishing such services.

(2) In general, the term "consumer" means the ultimate user or purchaser; it does not include a purchaser such as a retailer, who acquires the property for resale.

[6]The substance of sec. 164(b)(5) was originally enacted in 1942 as sec. 23(c)(3) of the Internal Revenue Code of 1939 (sec. 122 of the Revenue Act of 1942, Pub. L. 77–753, 56 Stat. 820). In the Internal Revenue Code of 1954, the provision appeared as sec. 164(c)(1). The provision took the form that appears in note 3 *supra*, when the Congress revised sec. 164 by the Revenue Act of 1964. In H. Rept. 88–749, at A44(1963), 1964–1 C.B. (Part 2) 125, 292, the following description of the rule of sec. 164(b)(5) appears:

"If a tax is *imposed on the seller*, but the amount of such tax is separately stated, then (as under existing law), to the extent that the amount so stated is *paid by the consumer* * * * *to his seller*, such amount is treated as a tax imposed on, and paid by, such consumer. [Emphasis added.]"

State sales tax will be deductible by the same person whether the State imposes its sales tax on the buyer or on the seller in the taxed retail transaction. See 5 J. Mertens, Law of Federal Income Taxation, sec. 27.35, pp. 66–67 (1980 rev.), and p. 2 (Cum. Supp. Oct. 1981).

Michigan imposes a tax on all persons engaged in the business of making sales at retail for the privilege of engaging in this business.[7] *Sims v. Firestone Tire & Rubber Co.*, 397 Mich. 469, 245 N.W.2d 13 (1976); *Federal Reserve Bank of Chicago v. Department of Revenue*, 339 Mich. 587, 64 N.W.2d 639 (1954). The term "sale at retail" includes "the sale of tangible personal property to persons directly engaged in the business of constructing, altering, repairing or improving real estate for others except property affixed to and made a structural part of the real estate of a nonprofit hospital or nonprofit housing." Mich. Comp. Laws sec. 205.51(1)(C) (Mich. Stat. Ann. sec. 7.521(c) (Callaghan 1971)).

The Michigan sales tax is imposed "upon that which is consumed and used and exempts only that which is sold for resale; the basis of classification is the disposition of the goods made by the buyer, not the character of the business of the seller or buyer." *Boyer-Campbell Co. v. Fry*, 271 Mich. 282, 300, 260 N.W. 165, 172 (1935).

The Michigan Department of Treasury General Sales and Use Tax Regulations provide that "The term 'retailer' includes all persons who sell to the last or final buyer, user or consumer." Mich. Admin. Code R 205.6, Reg. 6 (1954 and Supp. 1973). In defining "consumer," these regulations focus on the distinction between resale and any disposition other than resale. Mich. Admin. Code R 205.8, Reg. 8 (1954 and Supp. 1973).[8] Under the Michigan Department of the Treasury General Sales and Use Tax Rules, a contractor (which term

---

To the same effect is S. Rept. 88–830, at 210 (1964), 1964–1 C.B. (Part 2) 505, 713.

[7]Mich. Comp. Laws sec. 205.52 (Mich. Stat. Ann. sec. 7.522 (Callaghan 1971)).

Sec. 7.522 Annual tax; rate; separate records; personal obligation.] Sec. 2. There is hereby levied upon and there shall be collected from all persons engaged in the business of making sales at retail, as hereinbefore defined, an annual tax for the privilege of engaging in such business equal to [4%] of the gross proceeds thereof * * *

All references to Michigan statutes, regulations, or rules are as in effect for 1973.

[8]R 205.8. Reg. 8. Consumer.

"Consumer" means the person who shall have purchased tangible personal property for storage, consumption or use.

A "consumer" is further defined as a person who does not purchase goods for sale. The

includes those directly engaged in the business of "constructing, altering, repairing or improving real estate for others") is the consumer of materials used by him. Mich. Admin. Code R 205.71, rule 21 (1954 and Supp. 1973).[9]

The first step is to determine on whom the Michigan sales tax was imposed. *Petty v. Commissioner*, 77 T.C. 482, 485 (1981); *Armentrout v. Commissioner*, 43 T.C. at 19. From our analysis of Michigan law, *supra*, it is clear that the Michigan sales tax was imposed on Graham's suppliers, the sellers in the taxed transactions.[10]

Imposition of the sales tax on the seller satisfies the prerequisite for application of section 164(b)(5). In order to prevail under this provision, petitioners must show that they paid the sellers in the taxed transactions. However, the parties have stipulated that the taxes were generally separately listed on the invoices to Graham and were paid *by Graham* to the suppliers. Petitioners paid only Graham. Graham was not the seller in the relevant transactions. Petitioners, then, did not pay the sellers upon whom the taxes were imposed by Michigan. As a result, petitioners do not come within the class entitled to benefits under section 164(b)(5).[11]

---

buyer who disposes of goods in any other manner than by resale becomes the final consumer. He is the last person in the chain of transactions to make a purchase. The seller, who is the taxpayer under the sales tax act, is also the consumer for such articles used or consumed in the conduct of his business and sales made to him for his consumption or use are taxable. The fact that a person may be licensed by this department to sell at retail does not in itself exempt sales to such licensee.

[9]R 205.71. Rule 21. Sales and use tax contractors' rule. Contractors.

The word "contractor" as used herein includes persons regularly engaged in the business of constructing, altering, repairing or improving real estate for others. General contractors and subcontractors are deemed to be "contractors" for the purpose of this regulation.

Contractors include carpenters, brick layers, stone masons, plasterers, sheet metal, steel, tile and terrazzo workers, electricians, plumbers, heating, air conditioning, insulating, ventilating, papering, bridge, road, landscape and roofing contractors, painters, decorators, cementers, pavers and others who install on or incorporate into real estate tangible personal property for persons other than themselves.

*Contractors are consumers of the material used by them, therefore, all sales of tangible personal property to contractors are taxable, regardless of the type of contract entered into by the contractor;* except that the sale of tangible personal property is not taxable when sold to contractors under circumstances entitling exemption under sections 4 and subsections (a) and (b) of section 4a of the sales tax act, as amended, and section 4 of the use tax act, as amended by subsection (m). [Emphasis added.]

[10]In *Armentrout v. Commissioner*, 43 T.C. 16, 19 (1964), we concluded that Florida imposed its sales tax on the buyer. In *Petty v. Commissioner*, 77 T.C. 482, 486, 487 (1981), we concluded that North Carolina imposed its sales tax on the seller.

[11]On opening brief, respondent sets forth his argument that there was no agency relationship between petitioners and Graham. Since petitioners have made no contention

We conclude that petitioners are not entitled to deduct the Michigan sales tax. This result is consistent with our analysis of Michigan's sales tax law, under which Graham is regarded as the "consumer" of the materials "regardless of the type of contract entered into" between Graham and petitioners (note 9 *supra* ).

Petitioners contend that section 164(b)(5), considered with section 1.164–3(e)(2), Income Tax Regs., set up a Federal standard of who may deduct the tax—the ultimate user or purchaser—and there is no need to refer to State law for the meaning of this term. From that contention, they argue that "ultimate" is defined in Webster's Third New International Dictionary (1971) as "final" or "Last in a progression," and that they are the final "user" or "purchaser" of the materials. Petitioners point out that section 164(b)(5) provides that the tax is deemed imposed on the consumer, if its conditions are satisfied, even though the State imposes the tax on the seller.

We agree that the standard to be applied is a Federal standard. However, we reject petitioners' view of what the Federal standard is. We conclude that petitioners have failed to meet this Federal standard. *Firstly*, as discussed *supra*, petitioners did not pay the Michigan sales tax to the seller upon whom the tax was imposed. *Secondly*, the regulations relied on by petitioners focus on the required retail nature of the tax, distinguishing between users and sellers of the materials the sales of which give rise to the sales taxes sought to be deducted. Michigan's tax appears to be a tax at retail; it is imposed on the seller. Graham was the purchaser and, as a construction contractor, may properly be regarded as the user of the taxed materials. We see no conflict between the Federal standard and Michigan law, as they are applied to building contractors, at least on the record made by the parties in the instant case. *Thirdly*, petitioners read too much into the word "ultimate," as it appears in the Treasury Regulations. If we were to adhere to petitioners' analysis, then it might well be

---

that there was an agency relationship, we do not consider whether there was such a relationship and, if so, what effect that would have on the analysis of the instant case. Cf. *Petty v. Commissioner*, 77 T.C. at 488–490; *Armentrout v. Commissioner*, 43 T.C. at 20–21.

argued that whoever buys the residence from petitioners has an even better claim to being the "ultimate user or purchaser," thereby ousting petitioners from eligibility for the deduction, even under petitioners' analysis. *Fourthly*, petitioners' analysis of section 164(b)(5) would lead to a peculiar result. If the Michigan tax were imposed on the buyer, then section 164(b)(5) would not apply, the sales tax would be imposed only on Graham, and petitioners would get no deduction (except, perhaps, on an agency theory, see note 11 *supra*; see also *Armentrout v. Commissioner, supra*; *Petty v. Commissioner*, 77 T.C. at 487–490[12] ). We can discern no congressional intent to give "downstream" acquirers or payors greater rights through section 164(b)(5) when the sales tax is imposed on the seller than they would have when the sales tax is imposed on the buyer.

Petitioners argue that they are the ultimate consumers of the materials because under their contract Graham agreed to "sell" needed materials upon delivery "at the job site," and under the Michigan Uniform Commercial Code Sales, Mich. Comp. Laws section 2401 (Mich. Stat. Ann. sec. 19.2401 (Callaghan 1964 and Supp. 1974)), title passed from the sellers to Graham at the point of delivery, and, in turn, immediately from Graham to petitioners, all before the materials became attached to the home addition.

Petitioners' contention, that Graham sold to them the same materials that he had bought from the suppliers in transactions subjected to the Michigan sales tax, appears to be an argument that the sales tax was not correctly imposed under Michigan law.[13] We do not see how the asserted subsequent untaxed sale by Graham to petitioners (however treated by the Michigan Uniform Commercial Code) helps to show that petitioners paid the amount of the tax to suppliers who were the sellers in the transactions which gave rise to the only State sales taxes which petitioners claim to have paid.

---

[12]"[P]etitioners claim that they were the ultimate purchasers or consumers and the contractor was merely an agent or conduit for their funds enroute to suppliers. [77 T.C. at 488; fn. ref. omitted.]"

[13]If Graham purchased the materials in order to resell them, or if Graham disposed of the materials by resale to petitioners, then the Michigan statutes, case law, and regulations noted *supra* would appear to exclude Graham's purchases from the Michigan sales tax.

Petitioners also argue that they are the "ultimate user or purchaser" for purposes of the Michigan General Sales Tax Act. They contend that the act itself does not define that term, and they rely upon certain statements in *R.C. Mahon Co. v. Department of Revenue*, 306 Mich. 660, 11 N.W.2d 280 (1943), to the effect that final use or consumption of materials is by the transferee of a contractor using them in construction, alteration, or improvements of real estate for others. In *R. C. Mahon*, a declaratory decree was issued finding that under the 1939 version of the Michigan statute defining "sale at retail," sales tax was imposed on the contractor on the transfer of the materials to the party with whom he contracted to construct, alter, or improve real estate. The Michigan statute involved in *R. C. Mahon* did not include Mich. Comp. Laws sec. 205.51(1)(C) (Mich. Stat. Ann. sec. 7.521(c) (Callahan 1971)) which provides that the term "sale at retail" includes "the sale of tangible personal property to persons directly engaged in the business of constructing, altering, repairing or improving real estate for others." Thus, the statements made in *R. C. Mahon* have no application to the Michigan law as in effect for the instant case.

Finally, petitioners seek to (1) distinguish the instant case from *Armentrout v. Commissioner, supra*, on the basis that *Armentrout* involved Florida statutes (not Michigan statutes) or, alternatively, (2) contend that *Armentrout* was erroneously decided.

In *Armentrout*, a construction company agreed to purchase the materials needed to build a house for the Armentrouts and to furnish the necessary labor, in return for the Armentrouts' payment on a cost-plus contract basis (cost plus a percentage thereof as overhead and profit). The Armentrouts claimed a deduction for the Florida sales taxes paid by that company to its sellers for the materials. This Court held that the Armentrouts were not entitled to the deduction because the construction company was the consumer of the materials it purchased for use in the construction of the Armentrouts' residence under the relevant Florida statutes, and rules and regulations. The Court also concluded that the Florida sales tax was imposed on the construction company (citing Fla. Stat. Ann. sec. 212.07, providing that the retailer should add the tax imposed on him to the sales price charged the purchaser).

We agree that the framework of the Florida statutes, regulations, and rules as to the sales tax imposed by that State differs from that of Michigan. Nevertheless, we find appropriate the *Armentrout* analysis, looking to State law to determine, for purposes of section 164, (1) what is the transaction on which the sales tax is imposed, and (2) who are the seller and buyer in that transaction. That analysis was recently used by this Court in finding that the contractor was the consumer under the North Carolina sales tax for purposes of section 164(b)(5). *Petty v. Commissioner*, 77 T.C. at 487. We see no reason not to apply that analysis to the Michigan sales tax.

Petitioners argue that *Armentrout v. Commissioner, supra,* is erroneous on two bases. First, they contend that that decision is incorrectly based on "the general rule" of looking to State law to determine on whom the taxes are imposed for deductibility under section 164. However, the *Armentrout* opinion indicates that that decision is instead based on a determination of whether the Armentrouts were consumers in the taxable transaction under Florida law for purposes of the predecessor provision of section 164(b)(5). *Armentrout v. Commissioner*, 43 T.C. at 19–20. Second, they maintain that this Court erred in making an ultimate finding of fact "that the contractor [construction company] was the ultimate consumer within the meaning of the Code" because "For example, light fixtures (as well as all building materials) are not consumed when put in place by the contractor for use by the home owner."

What the Court concluded in *Armentrout v. Commissioner*, was that, under Florida law, the contractor was the "ultimate consumer" and as such was the person on whom the tax was imposed. 43 T.C. at 20. Since the tax was imposed on the buyer in the taxable transaction, there was no room for section 164(c)(1) (the predecessor of sec. 164(b)(5)) to treat the tax as imposed on the Armentrouts. For the reasons stated at pages 276–278 *supra*, we reject petitioners' proposed standard of who is the "consumer" for purposes of section 164(b)(5); we conclude that petitioners' light-fixtures contention does not help to illuminate this portion of the Internal Revenue Code.

On the one issue presented, we hold for respondent.

*Decision will be entered for the respondent.*