HARVEY RICHARD and ROSALIND IRENE BENNETT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Richard v. Commissioner
Docket No. 23084-80.
United States Tax Court
T.C. Memo 1983-183; 1983 Tax Ct. Memo LEXIS 606; 45 T.C.M. (CCH) 1183; T.C.M. (RIA) 83183; April 4, 1983. Harvey Richard and Rosalind Irene Bennett, pro se. Arlene A. Blume, for the respondent.
FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent determined a deficiency of $705 in petitioners' Federal income tax for the year 1977. After a concession by the petitioners, there remains for our decision the issue of whether petitioners are entitled to deduct sales tax paid on materials used in the construction of their home. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners Harvey and Rosalind Bennett (petitioner *607 husband is hereinafter referred to as Harvey) resided in Monkton, Maryland, when the petition in this case was filed. In 1977, petitioners entered into an agreement with Bernard Meyer (hereinafter Meyer), a builder. [1]Meyer agreed to construct a one-family dwelling on certain land owned by petitioners. The specifications of the house were carefully set out in the agreement, but petitioners and Meyer understood that petitioners could modify the original plans as construction progressed, and that petitioners would bear any increase in cost caused by such modifications. The agreement specified a price of $53,021, but due to various additions and modifications petitioners paid a total of $58,325.22. All materials used in construction were selected by Harvey. After he selected material at a particular *608 supplier's store, and informed Meyer of his selection, Meyer would call the supplier and order delivery to the jobsite. Harvey inspected and approved each delivery, and Meyer then paid for the supplies. The agreement called for progress payments to be made as follows: "Payments to be made as per draws setup by loaning institute [sic]. Any extras to be paid for at time of ordering or as agreed upon between owner and contractor." The evidence as to how progress payments were calculated is murky, but it is clear from the record that Meyer did not present individual bills to petitioners for payment. Meyer employed two workers to help construct petitioners' house. He hired both workers independently of petitioners, and without seeking petitioners' approval. Meyer, and not petitioners, supervised their work. Petitioners were present at the jobsite the entire time their house was being built. They consulted with Meyer about the construction of the house, and made various modifications in and additions to the original plans. Petitioners had spent two years researching house construction before beginning their house, but they were not as knowledgeable about construction *609 as was Meyer, and they relied upon his expertise. Before construction of petitioners' house began, petitioners and Meyer reached an oral agreement that petitioners and not Meyer would be entitled to deduct the Maryland sales tax paid on materials purchased for use in construction, and that Meyer would furnish to petitioners a separate list of all sales taxes paid. At the end of construction, Meyer furnished petitioners with only an estimate of the total sales taxes paid. OPINION State sales taxes may be deducted in the year paid. Sec. 164(a). [2] A tax imposed upon consumers of personal property is a sales tax; a "consumer" is the ultimate user or purchaser and not a purchaser who acquires property for resale. Sec. 1.164-3(e)(1) and (2), Income Tax Regs.Maryland imposes a sales tax upon the purchaser of tangible personal property. Md. Ann. Code art. 81, secs. 324 and 325(a) (1957), as amended. Petitioners argue that they were the consumers of the tangible personal property used in the construction of their home. Respondent contends that Meyer, and not petitioners, was the consumer of the building materials, and that petitioners purchased real property (a completed house) *610 and not tangible personal property. The record shows that it was Meyer who actually purchased the materials he used to construct petitioners' house, and that he was not reimbursed directly for these purchases by petitioners. This is not dispositive of the issue before us, however, for petitioners can still prevail if they establish that in purchasing the building materials Meyer acted as their agent, and not as an independent contractor. Petty v. Commissioner,77 T.C. 482, 488 (1981); Armentrout v. Commissioner,43 T.C. 16, 20 (1964). Whether or not Meyer was petitioners' agent is a question to be determined under Maryland law. Magruder v. Supplee,316 U.S. 394 (1942); Petty v. Commissioner,supra at 485. Under Maryland law, two ingredients are essential to an agency relationship: the agent must have the express or implied right to act for the principal; and, the principal must have the right to control the agent's conduct. Ramsburg v. Sykes,221 Md. 438, 158 A.2d 106 (1960); *611 Criminal Injuries Compensation Board v. Gould,273 Md. 486, 331 A.2d 55, 74 (1975); see also Restatement (Second) of Agency, sec. 1 (1957). Harvey visited all suppliers and personally selected the building materials used in the construction of petitioners' house before Meyer ordered delivery of such materials. This pattern of behavior suggests that Meyer may have had an implied right to act for petitioners in ordering goods from the suppliers. [3] We need not pursue this possibility, however, for we find that the second essential element of an agency relationship was missing from the relationship between petitioners and Meyer. The written agreement between petitioners and Meyer provides that Meyer will build a house meeting certain specifications. The agreement did not give petitioners the right to control Meyer, but merely the right to change the specifications as construction proceeded. Pursuant to the agreement, Meyer furnished workmen and exercised his best skill *612 and judgment in building the house. We conclude and hold from these facts that Meyer was not controlled by petitioners, but independently carried out his duties under the contract. Petty,supra at 489. The agreement also provides that Meyer will receive a fixed price, plus any increase due to modifications requested by petitioners. Any increase in the cost of materials or labor required for the house as originally specified would thus have been borne by Meyer.Petitioners thus had limited liability under their agreement with Meyer, a factor that is uncharacteristic of an agency relationship. Petty,supra at 489. [4]
Based on the foregoing, and the entire record, we find and hold that Meyer was not petitioners' agent. It follows that Meyer, not petitioners, was the consumer of the building materials used in petitioners' house, and that petitioners are not entitled to deduct the sales tax paid upon the purchase of those materials. *613 Petitioners also appear to argue that respondent is estopped from denying their deduction of the sales tax in issue because they relied upon language in respondent's publication "Your Federal Income Tax, 1978 Edition." The language in question provides: "The only sales taxes you can add to the table amount are those paid on the purchase of * * * materials you bought to build a new home if: (a) The tax rate was the same as the general sales tax rate; and (b) The seller stated the tax separately from the price of the item but included it in the total amount you paid." Petitioners evidently interpret this to mean that they can deduct the sales tax on the building materials as long as Meyer separately stated the tax as per his agreement with petitioners. Petitioners' reliance on "Your Federal Income Taxes" is misplaced, since the language in question is not directed to their situation under the Maryland sales tax, but rather to sales taxes which impose the incidence of taxation upon the seller. Cf. sec. 164(b)(5) and sec. 1.164-5, Income Tax Regs.[5]
*614 The above-cited language from "Your Federal Income Taxes" is something less than a lucid exposition for laymen of the relevant Code section, and we agree that petitioners' understanding of that language is not implausible. Nevertheless, petitioners' reliance on an infelicitous statement of the law in one of respondent's informal publications cannot estop respondent from disallowing deductions improperly claimed by petitioners. Green v. Commissioner,59 T.C. 456, 458 (1972).[6]
Decision will be entered for the respondent.
Footnotes
1. The agreement between petitioners and Meyer was embodied in a standard form construction contract, signed by Meyer but not by petitioners who did not sign the contract because Harvey did not like to sign documents. However, it is stipulated that the form is the contract between petitioners and Meyer, and we are satisfied that it accurately expresses the agreement between them.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
3. No explicit right was created in the written agreement between petitioners and Meyer, nor did petitioners suggest an explicit right was otherwise created.↩
4. In Petty v. Commissioner,77 T.C. 482 (1981), we applied the North Carolina law of agency, which is evidently very similar to the law in Maryland. See 77 T.C. at 488↩.
5. The language in question is inapplicable to petitioners in any event, since, as we have found, Meyer, and not petitioners, was the purchaser of the tangible personal property used in the construction of petitioners' house.↩
6. Underwood v. Commissioner,T.C. Memo. 1983-99↩.